[No. 12902–3–I.   Division One.   December 27, 1984.]

MICHAEL STEGRIY, ET AL, *Appellants,* v. KING
COUNTY BOARD OF APPEALS, *Respondent.*

*Neiman & Gillard* and *Stephen T. Araki*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Michael E. Thurston, Deputy*, for respondent.

COLEMAN, J.—This is an appeal from an order of the King County Superior Court affirming a decision of the King County Board of Appeals in which the Board denied the Stegriys a license for a hobby kennel under King County Code 11.04.060.[1] The Stegriys contend that (1) the

---

[1]References to KCC 11.04.060 are to the former version in effect in 1979:

"Hobby kennel license—Required. (a) LICENSE REQUIRED. It is unlawful for any person to keep and maintain any dog or cat within the county for the purposes of a hobby kennel without obtaining a valid and subsisting license therefor. The fee for such license shall be assessed upon the owner or keeper of such animals and shall be twenty dollars. In addition, each animal shall be licensed individually under provisions of Section 11.04.030(2).

"(b) LIMITATION ON NUMBER OF DOGS AND CATS ALLOWED. The total number of dogs and cats over four months of age kept by a hobby kennel shall not exceed the total number authorized by the King County Animal Control Division based on the following guidelines:

"(1) The number of animals permitted shall be established by the King County Animal Control Division based on such factors as animal size, type and characteristics of the breed and the amount of lot area; provided, that the maximum number shall not exceed twenty–five where the lot area contains five acres or more; the maximum number shall not exceed ten where the lot area contains thirty–five thousand square feet but less than five acres and the maximum number shall not exceed five where the lot area is less than thirty–five thousand square feet.

"(2) All open run areas shall be completely surrounded by a six–foot fence set back at least twenty feet from all property lines.

"(3) No commercial signs or other appearances advertising the kennel are permitted on the property.

"(4) The director may require additional setback, fencing, screening, or sound-

Board acted arbitrarily and capriciously in upholding the King County Animal Control Division's denial of the Stegriys' application for a hobby kennel license; (2) KCC 11.04.060 does not authorize the Animal Control Division to deny an application for a license; and (3) KCC 11.04.060 is in conflict with RCW 36.49.010 and is therefore unconstitutional.

The Stegriys reside in a rural neighborhood in Carnation, Washington, on approximately 37,000 square feet of land. They own five dogs, three of which they keep as pets, and two for show. The dogs are confined in their yard, which is enclosed by cyclone fencing.

On August 10, 1981, the Stegriys received a citation from the Animal Control License Section, Division of General Services of King County (Animal Control), for a barking problem. The record indicates that the citation was subsequently dismissed. As a result of the investigation, however, the Stegriys were advised by Animal Control that they needed a hobby kennel license to keep more than three pets on their property. They applied for the license, and the application was denied by Animal Control. The notice denying their application stated that Animal Control interpreted KCC 11.04.060(b)(4) to require that the department insure the compatibility of a hobby kennel with the surrounding development. The notice stated that Animal Control had

> inspected your premises and the proposed hobby kennel
> operation in determining compliance with King County

---

proofing requirements as he deems necessary to *insure the compatibility of the hobby kennel with surrounding development.*

"(5) The hobby kennel shall limit dog and cat reproduction to no more than twelve offspring per license year.

"(6) Each animal in the hobby kennel shall have current and proper immunization from disease according to the animal's species and age. For dogs such shall consist of DHL inoculation for dogs over three months of age and rabies inoculations for those over six months of age. (Ord. 4610 § 3, 1979: Ord. 4269 § 1, 1979: Ord. 2428 § 3, 1975: Ord. 1396 Art. II § 4, 1972)." (Italics ours.) KCC 11.04.060 was amended in 1983 (ordinance 6370, § 5 (1983)). References to KCC 11.04 in this opinion are to the 1979 version.

Code 11.04.060 . . .
During the investigation it became very clear that the proposed hobby kennel could never exist compatibly with the surrounding development.

From this notice and order, the Stegriys appealed to the King County Board of Appeals. The Board conducted a public hearing and received testimony from a license inspector for Animal Control, several neighbors who opposed the hobby kennel license, one neighbor who was in favor of the license application, and the Stegriys. The Board upheld the denial of the license by a 4–to–1 vote, and entered a notice and order which stated in part:

I.

STATEMENT

This matter came on before the Board of Appeals for King County on the appeal of Michael & Betty Stegriy, who through investigation and careful consideration of the application, was denied. The investigation was based on infromation [sic] received from residents in the area voicing their concern that the hobby kennel would not be fully compatible with the neighborhood due to excessive noise from the dogs (barking). Upon further investigation it became apparent to the Department that due to the incompatibility with the surrounding development, the application be denied pursuant to K.C.C. 11.04.060(B)(4).

II.

FINDINGS

. . .
3. That the inspectors of the King County Animal Control Division of the General Services Department acted reasonably under the circumstances noted in this matter.

4. That after an investigation by the Department of Animal Control the application for Hobby Kennel License was denied due to incompatibility with the surrounding development pursuant to K.C.C. 11.04.060-(B)(4).

The matter was appealed to the King County Superior Court pursuant to a writ of certiorari, and the Superior Court affirmed the decision of the Board. The Superior Court entered findings of fact and conclusions of law which

provided in part:

FINDINGS OF FACT

III.

Upon plaintiffs' application for a hobby kennel license the Animal Control Division (ACD) for King County conducted an investigation, which included a physical inspection of plaintiff[s'] property and neighborhood and receiving the comments of neighbors. As a result of the investigation and objections of neighbors the ACD concluded that the proposed hobby kennel was not compatible with the surrounding development.

. . .

CONCLUSIONS OF LAW

II.

That the scope of review in this case is whether the decision was arbitrary and capricious or contrary to law. This standard does not allow the court to substitute its own judgment for that of the Board of Appeals. There is substantial evidence in the record to support the decision of the Board of Appeals, therefore the decision of the Board was not arbitrary or capricious neither was the decision contrary to law.

III.

The power to grant licenses contained in King County Ordinance 11.04 also contains the power to deny licenses.

. . .

V.

King County Code 11.04.060(b)(4) which regulates hobby kennel licenses is constitutional and does not conflict with state law.

This appeal followed. In assigning error to conclusion of law 2, the Stegriys contend that Animal Control did not consider the specific criteria listed in KCC 11.04.060(d) when it denied the Stegriys' application for the hobby kennel license. Therefore, they argue, Animal Control's determination was an abuse of discretion.

■ The scope of judicial review of actions of an administrative agency is narrow:

[T]he judiciary will only review the actions of an administrative agency to determine if its *conclusions* may be said to be, *as a matter of law,* arbitrary, capricious, or contrary to law.

*Helland v. King Cy. Civil Serv. Comm'n,* 84 Wn.2d 858, 862, 529 P.2d 1058 (1975) (quoting *Reiger v. Seattle,* 57 Wn.2d 651, 653, 359 P.2d 151 (1961)). The long–standing definition of arbitrary and capricious action is:

> *wilful and unreasoning action, in disregard of facts and circumstances.* Action is not arbitrary and capricious when exercised honestly and upon due consideration of the facts and circumstances.

(Citations omitted.) *Northern Pac. Transp. Co. v. State Utils. & Transp. Comm'n,* 69 Wn.2d 472, 478, 418 P.2d 735 (1966). Furthermore,

> [w]here there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.

*DuPont–Fort Lewis Sch. Dist. 7 v. Bruno,* 79 Wn.2d 736, 739, 489 P.2d 171 (1971).

At the Board hearing, the representative of Animal Control testified that he understood the provisions of the ordinance to require that people in the area be happy with the proposed hobby kennel. He noted that the three complainants who testified at the hearing in opposition to issuance of the license were the same persons who lived on both sides of the Stegriys' property. The license inspector's description of the results of his investigation clearly revealed that the gravamen of the complaints was excessive noise. He indicated that while there had been some barking when he was on the premises, he personally had not been able to determine whether the barking was excessive. He remarked that there were numerous retired people in the area, and that those closest to the Stegriys would obviously be more affected by the hobby kennel than others would be.

One neighbor testified that the dogs did "bark a lot." For example, when he worked in his yard, the dogs barked at him. Another neighbor testified that he objected primarily to the noise, but that he also felt that a kennel was not compatible with a fenced recreation area. A third neighbor

testified that gardening was her favorite hobby, and that she could not be in the yard without the dogs barking at her. She stated that when her grandchildren were playing in the yard, the dogs charged and barked at them from behind the cyclone fence. This neighbor testified that the barking occurred during the day and at night. She declared that her purpose in living in the country was to have serenity, and that five barking dogs did not provide a serene atmosphere. Thus, in her opinion, a kennel license was not compatible with the neighborhood.

Witnesses stated that when fishermen and others used a public access road near the Stegriys' property, the dogs barked at these visitors. The third witness indicated that the dogs barked at anybody they saw. Although there was testimony to the contrary, the above illustrations prevent us from concluding that the action of the Board was willful and unreasoning or that it was in disregard of the facts and circumstances. There was room for more than one opinion; indeed, the Board itself was divided in its vote. Thus, we cannot say that the majority's action was arbitrary or capricious.

We next address the Stegriys' contention that the action of Animal Control and the affirmance of that action by the Board were contrary to law. The essence of appellants' argument on this issue is that the ordinance in question does not empower Animal Control to deny a license under the facts and circumstances presented here. They argue that Animal Control was required to explore other remedial avenues such as "additional setback, fencing, screening, or soundproofing requirements . . ." KCC 11.04.060(b)(4). They argue that Animal Control may not deny the license outright; instead, Animal Control must impose conditions on the license, and then, if the applicant does not satisfy the conditions, Animal Control may not issue the license. King County, however, argues that the power to deny the license application is necessarily implied in the grant of authority to the agency. Both parties cite the rule of *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d

1085 (1977), that an administrative agency has only those powers which are expressly granted to it by statute or are necessarily implied from the grant.

The same rules of construction apply to interpretations of municipal ordinances as to state statutes. *Puyallup v. Pacific Northwest Bell Tel. Co.*, 98 Wn.2d 443, 448, 656 P.2d 1035 (1982). A provision should be construed to make it effective and should be interpreted in light of the legislative purposes behind its enactment. *State v. Day,* 96 Wn.2d 646, 648, 638 P.2d 546 (1981). Furthermore, an ordinance should be construed to avoid a strained, unreasonable or illogical result. *Knappett v. Locke,* 92 Wn.2d 643, 645, 600 P.2d 1257 (1979); *Puyallup v. Pacific Northwest Bell Tel. Co., supra* at 450.

The purposes of KCC 11.04 are, in relevant part, to "secure and maintain such levels of animal control as will protect human health and safety" within the county, to prevent injury to property, and to avoid public nuisances. KCC 11.04.010. We conclude that the power of Animal Control to deny license applications is necessarily implied from the purposes of the ordinance. The contrary conclusion, *i.e.,* that Animal Control does not have the power to deny licenses, would lead to strained application of the ordinance and to illogical consequences because such a construction would detract from the discretion granted to Animal Control under the terms of KCC 11.04.060(b)(4).

We disagree with the Stegriys' contention that the director is required to pursue or experiment with remedial measures before an application may be denied. Subsections 1, 2, 5, and 6 of the ordinance are phrased in terms of what "shall" be done to comply with the hobby kennel license requirements; subsection 3 is also written in mandatory language. Subsection 4, however, provides: "The director *may* require additional setback, fencing, screening, or soundproofing requirements as he deems necessary to insure the compatibility of the hobby kennel with surrounding development." (Italics ours.) KCC 11.04.060(b)(4). When different words are used in the same statute or ordi-

nance, it is presumed that a different meaning was intended to attach to each word. *State ex rel. Pub. Disclosure Comm'n v. Rains*, 87 Wn.2d 626, 634, 555 P.2d 1368, 94 A.L.R.3d 933 (1976). Thus, the word "may" in subsection 4 permits Animal Control to use its discretion in deciding whether or not to impose conditions. Under this provision, Animal Control may decide, as it did here, that no extra conditions would insure compatibility. Moreover, such a decision by Animal Control is reasonable. After hearing the testimony, the Board did not act arbitrarily, capriciously or contrary to law in upholding Animal Control's decision.

The remaining issue is whether KCC 11.04.060(b)(4) conflicts with state law and is therefore unconstitutional. RCW 36.49.010 provides:

> Tax imposed—Rate—Tax optional with county. . . . For dogs kept in kennels for breeding, sale, or sporting purposes an individual license tax shall not be assessed, but the owner or keeper of such kennel shall be assessed a kennel license as follows:
>
> For twenty dogs, or less . . . . . . . . . . . . . . . ten dollars

KCC 11.04.060(a) makes it unlawful to maintain a hobby kennel without a license. Under KCC 11.04.190, such a violation is a misdemeanor. Hobby kennel is defined as:

> a noncommercial kennel at or adjoining a private residence where four or more adult animals are bred and/or kept for hunting, training and exhibition for organized shows, field, working and/or obedience trials or for enjoyment of the species.

KCC 11.04.020(8).

The Stegriys allege that the statute and the ordinance are in conflict. This argument is apparently premised on the view that the statute and the ordinance govern the same area. In *State v. Halvorsen*, 30 Wn. App. 772, 638 P.2d 124 (1981), Division Two held that a section of a Kitsap County ordinance, similar to the section of the King County ordinance at issue here, was unconstitutional because it conflicted with RCW 36.49.010, the statute

involved here. The plaintiff in *Halvorsen* kept her five dogs as pets. She was convicted for committing the misdemeanor offense of failure to obtain a kennel license as required by the ordinance. The *Halvorsen* court held that RCW 36.49-.010 "only authorizes a county to require kennel licenses when dogs are kept for breeding, sale, or sporting purposes." *Halvorsen*, at 775. The Kitsap County ordinance, however, required owners who kept pets "for any purpose", including purposes not listed in the statute, to purchase a kennel license. *Halvorsen*, at 774 & n.2. In the court's view, a county's power to impose criminal sanctions on dog owners was expressly limited to situations in which the owners kept dogs for the purposes enumerated in RCW 36.49.010. The court concluded that, because the Kitsap County provision required dog owners to obtain a kennel license when dogs were kept for any purpose, that provision, "as applied to the facts of this case, conflicts with the express limitation of RCW 36.49.010 and thereby violates article 11, section 11 of our state constitution." *Halvorsen*, at 775.

■■ We are not persuaded by the rationale employed in *Halvorsen*. The test for determining whether there is a conflict between an ordinance and a statute is:

> " '". . . whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." Judged by such a test, an ordinance is in conflict if it forbids that which the statute permits'.
> " '. . . Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail.

*Republic v. Brown*, 97 Wn.2d 915, 919, 652 P.2d 955 (1982) (quoting *Bellingham v. Schampera*, 57 Wn.2d 106, 111, 356 P.2d 292, 92 A.L.R.2d 192 (1960)); *see Second Amendment Found. v. Renton*, 35 Wn. App. 583, 587–88, 668 P.2d 596 (1983) (analyzing the question of conflict between state and municipal legislation as a preemption issue). "If the areas of operation of the Statute and Ordinance are distinct there is no inconsistency." *Seattle Newspaper–Web Pressmen's*

*Local 26 v. Seattle,* 24 Wn. App. 462, 469, 604 P.2d 170 (1979). KCC 11.04.060 forbids dog owners from keeping a certain number of dogs within various space limits for the purpose of enjoying the species, unless they obtain a hobby kennel license. RCW 36.49.010 requires that dog owners who keep 20 dogs or less in a kennel for breeding, sale or sporting purposes pay a kennel license tax of $10.

The view that the statute and the ordinance conflict does not appear to take account of the very different purposes behind each provision. RCW 36.49.010 is labeled a tax. Counties may not impose a tax without an express grant of power from the Legislature or the constitution. *Hillis Homes, Inc. v. Snohomish Cy.,* 97 Wn.2d 804, 809, 650 P.2d 193 (1982); *Carkonen v. Williams,* 76 Wn.2d 617, 627, 458 P.2d 280 (1969). However, by virtue of constitutional delegation, each county possesses a broad and extensive power to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Const. art. 11, § 11; *Hillis Homes,* at 808. Moreover, a charter county such as King County "has as broad legislative powers as the state, except when restricted by enactments of the state legislature." *King Cy. Coun. v. Public Disclosure Comm'n,* 93 Wn.2d 559, 562–63, 611 P.2d 1227 (1980) (quoting *Winkenwerder v. Yakima,* 52 Wn.2d 617, 622, 328 P.2d 873 (1958)).

KCC 11.04.060 imposes a $20 fee for a hobby kennel license. The characterization of this fee as a tax or a regulatory measure depends upon the primary purpose of the fee, which, in turn, depends on the general purpose of the ordinance.

> "[I]f the primary purpose of legislation is regulation rather than raising revenue, the legislation cannot be classified as a tax even if a burden or charge is imposed."
> . . . If the fees are merely tools in the regulation . . ., they are not taxes. If, on the other hand, the primary purpose of the fees is to raise money, the fees are not regulatory, but fiscal, and they are taxes.

(Citations omitted.) *Hillis Homes,* at 809.

KCC 11.04.010, which states the purpose of the chapter, reflects the intent of the ordinance to regulate rather than to raise revenue:

Purpose. It is declared the public policy of the county to secure and maintain such levels of animal control as will protect human health and safety, and to the greatest degree practicable to prevent injury to property and cruelty to animal life. To this end, it is the purpose of this chapter to provide a means of licensing dogs, cats, animal shelters, hobby kennels, kennels and pet shops and controlling errant animal behavior so that it shall not become a public nuisance and to prevent cruelty to animals.

Twenty dollars is a reasonable amount to assess for regulation. Moreover, the County's reasons for denying the application in this case obviously relate to the regulatory nature of the ordinance.

Even when a statute and an ordinance regulate the same subject, an ordinance may add to or require more than the statute requires without creating a conflict, unless that statute expressly limits its own terms. *Lenci v. Seattle,* 63 Wn.2d 664, 670–71, 388 P.2d 926 (1964). The statute involved here expressly limits the categories of owners upon whom a tax may be assessed, but it is silent with regard to who may be subject to regulation by the County. Thus, RCW 36.49.010 does not preclude the County from imposing regulations, including a fee, on dog owners who keep animals for any purpose, whether for show or enjoyment of the species. "A statute will not be construed as taking away the power of a municipality to legislate unless this intent is clearly and expressly stated." *State ex rel. Schillberg v. Everett Dist. Justice Court,* 92 Wn.2d 106, 108, 594 P.2d 448 (1979) (holding that a county ordinance prohibiting the use of motor boats on a lake did not conflict with a statute permitting safe operation of motor boats); *Second Amendment Found. v. Renton, supra* at 588 (holding that an ordinance limiting possession of firearms where alcoholic beverages are dispensed did not conflict with the Uniform Firearms Act; the act contained no express or intended

358

preemption of municipal regulation of gun control). The Legislature has not indicated any intent to restrict the County's broad power to regulate hobby kennels, regardless of the purpose for owning the dogs. Thus, we conclude that KCC 11.04.060 does not conflict with RCW 36.49.010, and that the County does have the power under KCC 11.04.060 to require the Stegriys to obtain a hobby kennel license in order to keep their dogs for enjoyment, for show, or for any other purpose.

Moreover, a municipal ordinance is presumed constitutional, and the party challenging the constitutionality of such a legislative enactment bears the burden of demonstrating the invalidity of the legislative enactment beyond a reasonable doubt. *Bellevue v. State,* 92 Wn.2d 717, 720, 600 P.2d 1268 (1979). The Stegriys have not met this burden.

Appellants' assignments of error are without merit. Therefore, we affirm the judgment of the Superior Court.

CORBETT, A.C.J., and WILLIAMS, J., concur.