[No. 9178–3–III.   Division Three.   June 7, 1988.]

DONALD HITE, ET AL, *Respondents,* v. PUBLIC UTILITY
DISTRICT NO. 2, *Appellant.*

*Ray Foianini,* for appellant.
*Garth Dano,* for respondents.

GREEN, J.—On June 6, 1975, Donald and Mary Hite signed an "Irrigation Power Agreement and Right-of-Way Easement" wherein Public Utility District 2 of Grant County (PUD) agreed to provide electrical service to the Hites. Electricity was required to irrigate their farm. By signing the agreement, the Hites avoided the payment of up-front line extension costs. The agreement provided, in part:

> All charges set forth in this agreement or accruing during the term hereof *shall from the date of recording of this agreement be a lien against the above described premises.* The lien shall be subject to foreclosure for delinquency or delinquencies as provided by the statutes of the State of Washington for foreclosing a real estate mortgage.

(Italics ours.) A second agreement for an increased level of power was executed on February 9, 1976, and contained an identical lien provision.

During the period 1975–1980, the Hites farmed the property and the PUD furnished them electrical service. In February 1980 the Hites sold the property on contract to S & O Farms. Although their irrigation account was transferred, the Hites did not terminate the PUD agreement; however, they believed their obligation to pay for electricity supplied to the property was terminated by the sale. The PUD furnished electricity to S & O Farms. It failed to pay the PUD's electric bill of $6,185 for the 1984 irrigation season and $8,237 for the 1985 season. Although the property continued to be farmed, several of the S & O Farms partners filed for chapter 11 bankruptcy relief in 1984 and 1985. Despite these filings, the PUD did not seek assurances of payment from the bankruptcy court.

S & O Farms defaulted on their purchase contract and their interest was forfeited. The Hites took possession of the property and requested the PUD to provide electricity. As a condition to honoring their request, the PUD demanded payment of the S & O Farms power bill and

threatened to foreclose the lien contained in the power agreement.

The Hites commenced this declaratory action to invalidate the lien; the PUD counterclaimed to foreclose the claimed lien. Both parties moved for summary judgment. The court held the lien invalid, dismissed the foreclosure action, determined the Hites were not personally liable for S & O Farms' power bills, and awarded the Hites attorney fees. This appeal followed.

The PUD contends the court erred in (1) holding the lien provision of the contract ultra vires, (2) failing to find the Hites were estopped from challenging the contract, and (3) awarding attorney fees. We affirm.

First, the PUD contends the court erred in determining the utility lacked legal authority to enter into contracts establishing a lien right. It asserts PUD's have broad authority to sell power, make contracts, and engage in any undertaking to render the system efficient and beneficial to the public. *Puget Sound Power & Light v. PUD 1,* 17 Wn. App. 861, 864, 565 P.2d 1221 (1977). We find no error.

■■ Public utility districts are municipal corporations. *Washington Natural Gas Co. v. PUD 1,* 77 Wn.2d 94, 97, 459 P.2d 633 (1969). "As 'creatures of statute,' municipal corporations possess only those powers conferred on them by the constitution, statutes, and their charters." *Tacoma v. Taxpayers,* 108 Wn.2d 679, 685–86, 743 P.2d 793 (1987). Accordingly, the PUD's authority to create a lien by contract must derive from either an express grant or by a necessary or fair implication from such a grant. *Tacoma,* at 686; *Spokane v. J–R Distribs., Inc.,* 90 Wn.2d 722, 726, 585 P.2d 784 (1978); *Port of Seattle v. State Utils. & Transp. Comm'n,* 92 Wn.2d 789, 794–95, 597 P.2d 383 (1979). PUD's are granted considerable authority to conduct their operations. RCW 54.16. A district has "full and exclusive authority to sell and regulate and control the use, distribution, rates, service, charges, and price thereof" free from the jurisdiction and control of the public service commission.

RCW 54.16.040. Under RCW 54.16.090, a utility may contract and "do all other things necessary to carry out the provisions of this title."

Although granted broad statutory powers, we find no *express* statutory language which authorizes PUD's to create a lien on real property to secure payment of its customers' utility bills. Even where the Legislature addressed the problem of a customer's inability to pay and delineated a procedure for termination of service with respect to residential space heating, RCW 54.16.285, it did not authorize a PUD to create a lien.

Generally, in the absence of express authority to do so, a municipality may not impose a lien upon property for delinquent service charges. 12 E. McQuillin, *Municipal Corporations* § 35.35(d) (3d ed. 1986). In *Linne v. Bredes,* 43 Wash. 540, 543, 86 P. 858 (1906), the court held a city may not, without express authority, enforce a lien for unpaid water bills:

> *[I]n the absence of express statutory authority, delinquent water rentals cannot be made a lien* or incumbrance upon property, as against a subsequent owner or occupant who did not contract said charges or make default in their payment.

(Italics ours.) Subsequent to *Linne,* the Legislature granted authority to cities owning their own water works, electric light or power plant facilities to create liens for delinquent and unpaid utility charges. RCW 35.21.290. Since similar authority has not been granted to public utility districts, the Legislature presumably did not intend PUD's to be given a lien for delinquent charges. Moreover, the lien now provided to cities is enforced by withholding service, not through foreclosure. RCW 35.21.290. Thus, if the PUD prevailed here, it would by contract have more authority to create and enforce liens than the Legislature has expressly granted to cities.

The PUD argues the lien provision of its contract is enforceable because it bears a sufficiently close nexus to the purpose and objective the Legislature intended to serve in

granting the district the power to operate the utility and enter contracts to render the system efficient. Therefore, it contends such power is necessarily implied. Relying on *Tacoma v. Taxpayers, supra,* the PUD asserts RCW 54.16-.040 and 54.16.090 are sufficiently broad to uphold its authority. It argues the sale of electricity by contract is a proprietary action. Therefore, unless prohibited by statute or a showing of arbitrary, capricious, fraudulent or unreasonable action, the contract must be given effect, citing *Bayha v. PUD 1,* 2 Wn.2d 85, 98, 97 P.2d 614 (1939):

> The legislature has seen fit to vest the commissioners of a public utility district with almost unlimited powers relative to the construction, purchase, etc., of utilities . . . This the legislature had a right to do, and we cannot therefore limit the powers granted unless such limitation is plain, *nor can we otherwise interfere with the exercise of the powers granted unless such powers are exercised capriciously and arbitrarily, or fraudulently.*

(Italics ours.) Reliance on *Bayha* is misplaced. Here the focus is whether the "powers granted" include the power to create liens, not whether the exercise of such delegated powers was arbitrary or capricious. *Bayha* deals with the latter issue, an issue not involved in the instant case.

Although utility districts have statutory authority to contract, reading in the power to create a lien gives the PUD more power than is expressed by statute. This the court in *Linne* declined to do. There, it refused to grant a lien to cities for delinquent service charges in the absence of an express grant of such authority. In addition, several policy reasons underlie the requirement of express statutory authority to create liens. First, legislative direction is necessary to determine priority amongst lienholders. Second, it is unfair to hold the Hites liable for electric services which they did not incur, but instead were incurred by a third party—S & O Farms. Since the PUD is a creature of the Legislature, the Legislature is the proper forum to decide whether a PUD should be authorized to create liens

and if granted the power, how such liens should be enforced.

We recognize the importance to the utility and its customers in creating liens in lieu of out–of–pocket security deposits. However, the Legislature has not seen fit to grant the PUD power to create liens for its electric service; hence, the provision of the Hite–PUD contract that seeks to create a lien is unenforceable as ultra vires.

Second, the PUD contends the court erred in failing to find the Hites estopped from challenging the validity of the agreement. It asserts the Hites were given the option of obtaining service without granting a lien or by making advance payment. Since the utility carried out its part of the bargain and the Hites benefited, it argues the doctrine of equitable estoppel precludes the Hites from reneging on their obligation. We do not agree.

When the acts of a governmental body are ultra vires and void, those acts cannot be asserted as working an estoppel against the government. *State v. Adams,* 107 Wn.2d 611, 615, 732 P.2d 149 (1987); *Washington Educ. Ass'n v. Smith,* 96 Wn.2d 601, 610, 638 P.2d 77 (1981). Governmental acts which are ultra vires are immune from application of the doctrine of equitable estoppel. *Finch v. Matthews,* 74 Wn.2d 161, 172, 443 P.2d 833 (1968).

The PUD's reliance on *Stover v. Winston Bros. Co.,* 185 Wash. 416, 55 P.2d 821, *appeal dismissed,* 299 U.S. 508, 81 L. Ed. 376, 57 S. Ct. 44 (1936) for the position equitable estoppel precludes the Hites from challenging the lien is misplaced. Unlike the facts presented here, the city's acts in *Stover* were not ultra vires. Hence, *Stover* is not applicable.

Finally, the PUD argues the court erred in awarding the Hites attorney fees. The utility asserts if the lien provision is ultra vires, then the whole *contract* is void and has no force or effect, including the attorney fee provision. Consequently, it is inequitable for the court to declare the contract ultra vires and then allow the Hites attorney fees. It further argues the attorney fee provision does not allow an

award in favor of the Hites since they instituted the action to invalidate, rather than foreclose, the lien. We disagree.

[5] The agreement provides for attorney fees:

In the event any charges become delinquent and an *action at law to foreclose* the same shall become necessary, *the prevailing party shall,* in addition to statutory costs, *be allowed a reasonable attorney's fee.*

(Italics ours.) Although the Hites commenced and prevailed in a declaratory action, rather than a foreclosure, it is reasonable to allow them attorney fees. If the PUD's interpretation of the provision is adopted, only an action specifically seeking to *foreclose* the lien would allow an award of attorney fees. As the lienholder, the PUD would most likely be the party bringing the action. Attorney fees would be awarded to the Hites only if they were successful in preventing foreclosure. This is in fact the result of the Hites' declaratory action; the lien sought to be foreclosed by the PUD's counterclaim may not be foreclosed. Thus the award of attorney fees at trial was proper. The Hites are granted attorney fees on appeal in the requested and unchallenged amount of $2,672.

The PUD incorrectly relies on *McGary v. Westlake Investors,* 99 Wn.2d 280, 661 P.2d 971 (1983) for the proposition an award of attorney fees does not apply to declaratory actions unless the contract specifically provides otherwise. In *McGary* the court's decision to deny attorney fees focused on the fact there was no prevailing party. *McGary,* at 288.

Affirmed.

McInturff, C.J., and Thompson, J., concur.

Reconsideration denied June 28, 1988.

Review granted by Supreme Court November 1, 1988.