[No. 13069–6–II.   Division Two.   January 30, 1991.]

JUNG PIL CHOI, ET AL, *Respondents,* v. THE CITY OF FIFE, *Appellant.*

*Loren D. Combs, City Attorney,* and *Laurie J. Nornes, Assistant; Sampson Wilson & Combs,* for appellant.

*Richard A. Finnigan, H. Andrew Saller, Jr.,* and *Vandeberg & Johnson,* for respondents.

ALEXANDER, J.—The City of Fife appeals a judgment of the Pierce County Superior Court declaring that Frank and Mary Jakutis had not "vacated or abandoned" real property owned by them, thus, permitting their continued nonconforming use of such property. We reverse.[1]

In 1968, the Jakutises purchased a food manufacturing and storage facility near the City of Fife, located on a parcel of property in unincorporated Pierce County. In 1973, Fife annexed the property into the city. In 1979, the City

---

[1] Jung Pil Choi and Eun Kyung Choi purchased the subject property and because they are the real parties in interest they have been substituted as respondents by order of this court dated February 20, 1990.

zoned the property for single family, residential use only. The Jakutises continued, however, to use the facility for manufacturing and storage of foodstuffs, a nonconforming use under Fife's ordinances.

In 1982, the Jakutises contracted to sell the property and building. Their purchasers continued to use the property for essentially the same purpose as had the Jakutises. In 1986, the purchasers defaulted on the purchase contract and ceased all operations at the facility. The purchasers filed for bankruptcy and removed most of the equipment from the building.[2] The Jakutises obtained forfeiture of the purchase contract and regained possession of the property in January 1987. They have attempted to sell the property since 1986. The building and facilities have not been used for any purpose since July 1986.

On March 17, 1988, the City of Fife notified the Jakutises that, because the nonconforming use had been terminated for 13 consecutive months, the Jakutises were no longer permitted to maintain the nonconforming use. The Jakutises objected to this determination. On April 11, 1988, the Mayor of Fife notified the Jakutises' attorney that they could continue the nonconforming use of food processing on the property. On June 12, 1989, Fife's city attorney sent the Jakutises a copy of a letter that had been written to the Fife community development director stating that the Jakutises could not use their property for any use other than single family residential use.

Upon receipt of the city attorney's letter, the Jakutises brought an action in Pierce County Superior Court for a judgment declaring that they could maintain the nonconforming use of the property. The trial court, after reviewing affidavits presented in lieu of testimony, entered findings of fact and granted a declaratory judgment to the Jakutises on

---

[2]At oral argument, counsel for the City indicated that the only equipment remaining at the facility is a large freezer and some miscellaneous office equipment.

the basis that they had not intentionally "vacated" or "abandoned" the property.

At the outset, we direct our attention to section 19.76-.040(D) of the Fife Municipal Code, which relates to nonconforming *structures*. It reads as follows:

> When a nonconforming structure, or structure and premises in combination, is *vacated or abandoned* for six consecutive months or for eighteen months during any three year period, the structure, or structure and premises in combination, shall thereafter be required to be in accordance with the regulations of the zone in which it is located.

(Italics ours.) Another section of the Fife Municipal Code, 19.76.070(D), applies the above quoted language relating to nonconforming structures to nonconforming *uses*. It reads as follows:

> A [nonconforming] use shall be subject to the provisions of chapter relating to the abandonment of structure or use.

The City argues on appeal that the Jakutises vacated the nonconforming use of the premises for more than 6 consecutive months and that pursuant to the above quoted sections of the Fife Municipal Code, their right to maintain that use has terminated. The Jakutises respond by arguing that the code provisions only apply if there is a showing that they *intended* to relinquish the nonconforming use. Because it was not shown that they intended to relinquish the nonconforming use, they suggest, the use is not "vacated" or "abandoned."

The City concedes that one is not deemed to have "abandoned" a use unless it shows that the owner actually intended to do so. *See King Cy. v. High*, 36 Wn.2d 580, 219 P.2d 118, 18 A.L.R.2d 722 (1950). It maintains, however, that as a matter of law one may be deemed to have "vacated" a nonconforming use whether or not there was an intent to do so.

The primary objective in interpreting a zoning ordinance is to determine the intent of the legislative body that drafted the ordinance. *Wiggers v. Skagit Cy.*, 23 Wn. App. 207, 212, 596 P.2d 1345 (1979). In attempting to discern the intent of the Fife City Council, we must keep in

mind that nonconforming uses are not favored in the law and unless their continuation is necessary to avoid injustice, the nonconforming use will be prohibited. *Andrew v. King Cy.*, 21 Wn. App. 566, 586 P.2d 509 (1978).

■ To understand the meaning of the term "vacated," we must first look to the Fife Municipal Code. We note preliminarily that the Fife Municipal Code uses both the term "abandoned" and the term "vacated" in its ordinance. When different words are used in the same ordinance, it is presumed that a different meaning was intended to attach to each word.[3] *State ex rel. Public Disclosure Comm'n v. Rains*, 87 Wn.2d 626, 634, 555 P.2d 1368, 94 A.L.R.3d 933 (1976); *Stegriy v. King Cy. Bd. of Appeals*, 39 Wn. App. 346, 353–54, 693 P.2d 183 (1984). Neither term is defined in the code. Section 19.04.040, however, provides a method for determining the definition of undefined terms within the code.

> The definition of any word or phrase not listed in this ordinance which is in question when administering this ordinance shall be as defined from one of the following sources which are incorporated herein by reference. Said sources shall be utilized by finding the desired definition from source A, but if it is not available there, then source B may be used and so on. Sources are as follows:
> A. Any city resolution, ordinance, code or regulation;
> B. Any statute or regulation of the State of Washington (i.e., the most applicable);
> C. Legal definitions from case law or *a law dictionary;*
> D. The common dictionary.

(Italics ours.) Because the term "vacated" is not defined in any statute or regulation of the State of Washington, we next turn to a dictionary definition.

■ Black's Law Dictionary defines the term vacate, the present tense of vacated, as follows:

> To move out; to make vacant or empty; to leave; especially, to surrender possession by removal; to cease from occupancy.

---

[3]Black's Law Dictionary defines "abandoned property" as property to which the "owner has relinquished all right, title, claim, and possession, *with intention* of not reclaiming it or resuming its ownership, possession or enjoyment". (Italics ours.) Black's Law Dictionary 13 (4th ed. 1968).

Black's Law Dictionary 1717 (4th ed. 1968). Under that definition, whether one has "vacated" is measured objectively.

Other jurisdictions have reviewed zoning ordinances that use the word "vacant" in the same way as the term "vacated" is used in the Fife Municipal Code. They have viewed the term consistent with the definition found in Black's Law Dictionary. For example, in *Wyatt v. Board of Adjustment–Zoning,* 622 P.2d 85 (Colo. Ct. App. 1980), the Colorado Court of Appeals held that the nonconforming use could be terminated "regardless of whether the property owner intends to abandon that use." *Wyatt,* 622 P.2d at 86. In *Morrison v. Horne,* 12 Utah 2d 131, 363 P.2d 1113 (1961), the Utah Supreme Court held that the owners' intent to abandon was "uncontrolling." *Morrison,* at 132.

In a more recent case, the Appeals Court of Massachusetts distinguished the word "abandoned" from other words that are commonly used in conjunction with it. *Bartlett v. Board of Appeals,* 23 Mass. App. Ct. 669, 505 N.E.2d 193 (1987). The *Bartlett* court considered whether the words "abandoned" and "not used" meant the same thing. The court drew a distinction between the two terms on the ground that the latter implied an "objective standard," while the former requires a showing of intent. The court pointed out the absurdity of construing the two terms to mean the same thing:

> If, on the other hand, we are to read into the phrase ["not used"] a requirement of voluntary or intentional action on the part of the owner of nonconforming premises amounting to a traditional "abandonment," such as has been done in the past with the word "discontinued," then the Legislature must be taken to have indulged in a tautology: the statute would have to be read as authorizing cities and towns to regulate nonconforming uses which have been "abandoned or abandoned for a period of two years or more." We reject any such construction as unreasonable.

(Footnote omitted.) *Bartlett,* 505 N.E.2d at 196.

Strong policy considerations also militate against our reading an element of intent into the definition of the word "vacated." As one commentator pointed out:

> [T]he use of such an interpretation makes it very easy for the former nonconforming user. By definition, the question comes up in court only when the owner is trying to resume nonconforming operations. In such a situation, his lawyer will tell him that, if he testifies that he never had any intention of abandoning the nonconforming use, he will win the lawsuit. In such a situation many plaintiffs can persuade themselves to give the correct testimony; it is safe to assume that normally plaintiff either so testifies, or withdraws the suit—and so the case never appears in the reports. This subjective test is thus a silly one, putting a premium on quasi–perjury, and in effect reads the requirement out of the zoning law.
>
> . . . .
>
> In view of this [repudiation of the subjective test by three of the four states that established it], together with the inherent foolishness of the rule, the future of the subjective test is open to serious question. It seems probable that, as appropriate cases come up, a greater number of the more sophisticated courts will be repudiating it and adopting the objective test, especially where the ordinance clearly points in this direction.

4A N. Williams & J. Taylor, *American Planning Law* §§ 115.02, 115.14, at 187, 211 (1986).

For all of these reasons we conclude that one may be held to have vacated a nonconforming use without a showing that they intended to vacate.

■ The Jakutises argue that the City is estopped from denying the nonconforming use because the Mayor authorized such use in his letter of April 11, 1988. They cite *Shafer v. State*, 83 Wn.2d 618, 521 P.2d 736 (1974), which holds that the doctrine of estoppel can be applied to the acts of a municipality in certain circumstances. However, they overlook the well established line of cases holding that the doctrine of equitable estoppel will not be applied to a governmental body where the act giving rise to the alleged reliance was ultra vires or void. *State v. Adams*, 107 Wn.2d 611, 615, 732 P.2d 149 (1987); *Washington Educ. Ass'n v. Smith*, 96 Wn.2d 601, 610, 638 P.2d 77 (1981); *Hite v. PUD 2*, 51 Wn. App. 704, 709, 754 P.2d 1274 (1988); *Arbogast v. Westport*, 18 Wn. App. 4, 7, 567 P.2d 244 (1977). Nothing

in the Fife Municipal Code gives the Mayor the authority to unilaterally allow the continuation of a nonconforming use beyond the time limits set forth in section 19.76.040(D). Only the Fife City Council has the authority to amend the code. The Mayor's acts were ultra vires and the City is not estopped from denying the nonconforming use.

The Jakutises argue, finally, that even if all of the City's legal arguments are accepted, there was no showing that they actually vacated the premises. They point out that the trial court made no finding as to whether or not the Jakutises actually vacated the premises. The absence of a finding on this issue, they argue, constitutes a finding against the party with the burden of proof on that issue. If the trier of fact had heard live testimony, we would be inclined to agree with the Jakutises. Because the trial court was presented with affidavits in lieu of live testimony, however, we must independently review the record and we are not bound by the trial court's findings, or lack of findings, on a particular issue. *Bering v. Share,* 106 Wn.2d 212, 220, 721 P.2d 918 (1986), *cert. dismissed,* 479 U.S. 1050 (1987); *In re Marriage of Hunter,* 52 Wn. App. 265, 268, 758 P.2d 1019 (1988), *review denied,* 112 Wn.2d 1006 (1989). In our judgment, the evidence presented to the trial court establishes that the property had been "vacated" since July of 1986. As a result, the nonconforming use is terminated.

We reverse.

PETRICH, A.C.J., and REED, J. Pro Tem., concur.

Review denied at 116 Wn.2d 1034 (1991).