[No. 19061-7-III.   Division Three.   January 16, 2001.]

THE CITY OF SPOKANE *on the Relation of the Wastewater Management Department, Respondent,* v. THE DEPARTMENT OF REVENUE, *Appellant.*

---

[31] Ex. 2, page 8.

[32] Report of Proceedings (Jan. 27, 1999) at 5.

*Christine O. Gregoire, Attorney General,* and *Anne E. Egeler, Assistant,* for appellant.

*Michael Connelly, City Attorney,* and *Robert G. Beaumier, Jr., Assistant,* for respondent.

BROWN, J. — The Department of Revenue (Department)

taxes revenue obtained from "sewerage collection" services at a higher rate than revenue attributable to sewage "transfer" functions. The City of Spokane Sewer Department (City) asked the Department for a refund, arguing more of its sewer system is engaged in transfer functions. A Department administrative law judge rejected the request. The Board of Tax Appeals affirmed. The superior court reversed the Board. The Department appeals. We reverse the superior court and affirm the Department's decision.

## FACTS

In 1993, the City's Sewer Department managed 755.52 miles of sewer line. Sewage from individual residences and businesses runs into gravity flow pipes of eight-inch diameter or less termed "laterals." The laterals run into "interceptors," gravity flow pipes that may be as large as 135 inches in diameter.

When the sewage must be moved uphill, "lift stations" pump the waste water into pressurized "force mains" to get the sewage up to a point where gravity flow resumes. Gravity flow pipes do not discharge directly into the force mains because the pressure would cause a backflow. The sewage ultimately goes to a treatment plant for disposal.

The Department collects excise taxes on the income the City derives from sewer service. The tax rate depends on the type of service. RCW 82.16.020. The public utility tax rate for "sewerage collection" is 3.6 percent. RCW 82.16.020(1)(a). Other sewer services "in addition to or separate from" sewerage collection, such as sewage "transfer," are subject to a lower tax rate under the business and occupation tax (B&O tax). WAC 458-20-251(7) (Rule 251); RCW 82.04.290. The applicable B&O tax rate changes periodically but both parties seem to agree 2.0 percent applied during the relevant period.

The City sought a partial refund of public utility taxes paid for the period January 1, 1990, through September 30, 1995, arguing that the Department counted too much of the

sewer network as devoted to sewerage collection subject to the 3.6 percent rate. The City contended much of its network, such as interceptors, lift stations, and force mains, was engaged in transfer functions subject to the 2.0 percent B&O rate. The Department contended the City's sewer network was engaged in sewage collection until the last point a customer hooked into the system prior to reaching the treatment facility.

In August 1997, an Administrative Law Judge (ALJ) rejected the City's argument. The Board of Tax Appeals (Board) affirmed the ALJ and entered its final decision. The City successfully appealed to the superior court. The court reasoned the collection function ended where the laterals connected with the interceptors. The court determined that 358.1 of 755.52 miles of the City's sewer system were sewage collection and that the remainder was engaged in noncollection functions. The court remanded the matter to the Board. The Department then filed this appeal.

## ISSUE

Did the Department err by deciding the apportionment point between the 3.6 percent public utility tax and the 2.0 percent B&O tax (where "sewage collection" ends) is where the last City customer's sewage feeds into a city sewer pipe for transfer to disposal or for transfer to treatment for disposal?

## ANALYSIS

■■ We review appeals of Board of Tax Appeals decisions under the Administrative Procedure Act (APA), chapter 34.05 RCW. *Stuewe v. Dep't of Revenue*, 98 Wn. App. 947, 949, 991 P.2d 634, *review denied*, 141 Wn.2d 1015 (2000). Our standard of review is de novo. *Id.* The City has the burden to show the Board's decision was invalid. RCW 34.05.570(1)(a); *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998).

RCW 34.05.570(3)(a)-(i) sets forth nine circumstances where a reviewing court will reverse the Board. The City contends (1) the Board erred in its interpretation or application of the law, RCW 34.05.570(3)(d); (2) the Board's decision is unsupported by substantial evidence, RCW 34.05.570(3)(e); (3) the Board's decision is inconsistent with Rule 251; and (4) the Board's decision was arbitrary and capricious, RCW 34.05.570(3)(i).

■■ Conclusions of law are reviewed under the error of law standard. *Stuewe*, 98 Wn. App. at 949 (citing *Wilson v. Employment Sec. Dep't*, 87 Wn. App. 197, 201, 940 P.2d 269 (1997); *St. Martin's Coll. v. Dep't of Revenue*, 68 Wn. App. 12, 15-16, 841 P.2d 803 (1992)). We defer to the Board's interpretation of law when the Board is construing an ambiguous statute within its expertise. *Stuewe*, 98 Wn. App. at 950.

■■ Because the City alleges the Board's decision is not supported by substantial evidence, we review the entire record before the Board for substantial evidence. RCW 34.05.570(3)(e). Evidence is substantial if it is of sufficient quantity " 'to persuade a fair-minded person of the truth or correctness of the [agency] order.' " *City of Redmond*, 136 Wn.2d at 46 (quoting *Callecod v. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)). But "[u]nchallenged findings of fact are verities on appeal." *Stuewe*, 98 Wn. App. at 950 (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 407, 858 P.2d 494 (1993)).

■ The resolution of our unique issue hinges upon whether the Board correctly interpreted and applied the term "sewerage collection" in RCW 82.16.020(1)(a). When interpreting a statute, we strive to give effect to legislative intent. *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 148, 3 P.3d 741 (2000); *Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). According to the ESSB 4228 Bill Analysis, 49th Leg., Reg. Sess. (Wash. 1985), the Legislature enacted RCW 82.16.020(1)(a) to raise revenue for new public works sewer projects.

■■ Absent ambiguity, we rely on the plain language of

the statute. *State v. Azpitarte*, 140 Wn.2d 138, 142, 995 P.2d 31 (2000). A statute is ambiguous if it is susceptible to more than one reasonable interpretation. *W. Telepage, Inc. v. City of Tacoma*, 140 Wn.2d 599, 608, 998 P.2d 884 (2000). If ambiguous, we engage in statutory construction. *State v. Bash*, 130 Wn.2d 594, 601, 925 P.2d 978 (1996).

Generally, we construe an ambiguous tax statute " 'most strongly against the taxing authority.' " *Simpson Inv. Co.*, 141 Wn.2d at 149 (quoting *Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 401, 722 P.2d 787 (1986)). But when we interpret exemption or deduction provisions, the burden is upon the taxpayer to show the exemption or deduction applies and any ambiguity is " 'construed strictly, though fairly and in keeping with the ordinary meaning of their language, against the taxpayer.' " *Simpson Inv. Co.*, 141 Wn.2d at 149-50 (quoting *Group Health Coop. of Puget Sound, Inc. v. Tax Comm'n*, 72 Wn.2d 422, 429, 433 P.2d 201 (1967)).

Here, the issue does not revolve around an exemption or deduction provision, but rather which tax applies to the relevant portions of the City's sewer system, the public utilities tax or the B&O tax. Consequently, this court will construe any ambiguities against the Department. *Group Health*, 106 Wn.2d at 401. In this regard, the parties give competing interpretations of "sewerage collection." The Department contends the term means the process of gathering and transporting the sewage to a common end point, where the last customer hooks into the lines before disposal or transfer for treatment for disposal. The City argues the term narrowly means the collection process ends at the point where the laterals dump sewage into the interceptors for transfer to the treatment facility.

The statute does not define "sewerage collection." WAC 458-20-251(3)(a) (Rule 251) does. Using common dictionary definitions, as suggested by the State, overlooks the Department's Rule 251 definition. *See, e.g., Int'l Ass'n of Fire Fighters Local 3266 v. Dep't of Ret. Sys.*, 97 Wn. App. 715, 719-20, 987 P.2d 115 (1999); *Anderson v.*

*Dep't of Ecology*, 34 Wn. App. 744, 748-49, 664 P.2d 1278 (1983) (cases relying on WAC definitions); *see also Choi v. City of Fife*, 60 Wn. App. 458, 462, 803 P.2d 1330 (1991) (resorting to dictionary when term not defined in either statute or regulation).

Rule 251 states:

> "Sewerage collection business" means the activity of receiving sewage deposited into and carried off by a system of sewers, drains, and pipes to a common point, or points, for disposal or for transfer to treatment for disposal, but does not include such transfer, treatment, or disposal of sewage.

WAC 458-20-251(3)(a).

"Like a statute, we interpret a WAC provision to give effect to its underlying policy and intent." *Walk v. Dep't of Licensing*, 95 Wn. App. 653, 657, 976 P.2d 185 (1999) (citing *City of Sunnyside v. Fernandez*, 59 Wn. App. 578, 582, 799 P.2d 753 (1990)). Broken down, the plain language of Rule 251 indicates sewerage collection is the "activity" of "receiving" sewage "deposited into and carried off" to "a common point, or points" for "disposal" or for "transfer" to a treatment facility for disposal. Sewerage collection does not include the "transfer, treatment, or disposal of sewage."

Regarding Rule 251, the Department contends the "common point" is any point where the last City customer hooks into the sewer system prior to disposal or transfer for treatment for disposal. Thus, any length of sewage pipe still receiving sewage from customers is involved in a form of "collection." The City argues the laterals "carry off" sewage to "common points," the interceptors, which then "transfer" the waste, with the aid of lifting stations and power mains, to the place of treatment and disposal. As neither the regulations nor the statute define "carry," "receive" and "transfer," a dictionary definition may be helpful. *Choi*, 60 Wn. App. at 462.

According to its common definition, to "carry" means to "contain and direct the course of" a fluid. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 343 (3d ed. 1993). By way of

example, the dictionary states: "the drain *carries* sewage." *Id.* The term is also synonymous with channel, conduct, convey, and *transport. Id.* To "receive" is "to take possession or delivery of . . . to take in . . . to act as a receptacle or container." WEBSTER'S, *supra*, 1894. To "transfer" is "to *carry* or take *from one* person or *place to another.*" WEBSTER'S, *supra*, 2426-27 (emphasis added). Transfer also means "to move or send to a different location." WEBSTER'S, *supra*, 2427. Transfer is synonymous with transport, remove, and move. WEBSTER'S, *supra*, 2426-27.

While the dictionary does not give precise meanings of these terms, reading Rule 251 in its entirety helps the reader understand them in context. The primary activity of "sewerage collection" is "receiving sewage." The sewage that the collection business receives has been "deposited into and carried off by a system of sewers, drains, and pipes." This system continues "to a common point or points" at which the process becomes "disposal" or "transfer to treatment for disposal."

Read in a manner consistent with its syntax, Rule 251 clearly means the collection process ends where the entire system of sewers, drains, and pipes connect with the transfer, treatment, or disposal phase of the process. Force mains are merely pipes under pressure from the lift stations. Consequently, as employed in the City's sewer system, the force mains and lift stations are integrated components of the "system of sewers, drains, and pipes" from which the sewerage collection operation receives its sewage.

The term "transfer" is somewhat synonymous with "carrying away" but again, in the context of sewerage collection, the term has a meaning of its own. "Transfer" essentially involves point-to-point transportation of sewage after "receiving" it at "a common point, or points."

According to this reading, the lift stations and force mains do not have a "transfer" role as contemplated under the rule. "Transfer" in this context means that once the sewage is received at "a common point, or points" it is

moved to another location for treatment. For example, some municipalities like Spokane County may need to transport or pipe untreated sewage to facilities located in the City.

The City makes much of Rule 251's use of the plural "points," arguing that the many places at which the laterals discharge into the interceptors constitute a multitude of "common points" where the sewage is transported to the treatment facility. But the City's interpretation does not square with the rule as written. The placement of "common point, or points" in the wording of the rule suggests the "points" exist at the end of the "system of sewers, drains, and pipes." The use of the plural simply allows for systems with multiple end points.

The City contends the interceptors, lift stations, and power mains do not collect, they transport. Engineer William R. Peacock's informative testimony before the Board certainly showed that interceptors, lift stations, and power mains engage in a transportation function from a purely engineering standpoint. But Rule 251 is not an engineering standard. Under Rule 251's plain language, the City's interceptors, lift stations, and power mains comprise a system for carrying away wastewater to be received at the end of the system *before* transfer, treatment, or disposal. For purposes of tax assessment, this carrying away function is clearly contemplated as sewerage collection under Rule 251. Thus, the interceptors, lift stations, and force mains of the City's sewer system are engaged in sewerage collection.

Although a challenge to interpret, Rule 251 is not ambiguous when read in its entirety with the common meanings of its terms employed. Consequently, we need not resort to tools of statutory construction. *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998). Nor are we required to construe the statute against the Department as the City contends. *Simpson Inv. Co.*, 141 Wn.2d at 149.

This interpretation gives effect to every word and phrase of Rule 251. *See Bash*, 130 Wn.2d at 602 (appellate court

construes statute so as not to render any part of it meaningless or superfluous). And this reading is consistent with the Department's stated intent in promulgating Rule 251, which was to narrow the range of activity subject to the tax from "all sewerage services" to the "collection" portion of such services. WAC 458-20-251(1), (2); *see Fray v. Spokane County*, 134 Wn.2d 637, 649, 952 P.2d 601 (1998) (reviewing court reads related provisions together so that they do not conflict). Further, this interpretation of Rule 251 is consistent with the Legislature's general intent to fund new public works projects. *See Walk*, 95 Wn. App. at 657 (reviewing court interprets WAC provision to give effect to underlying policy and intent).

Therefore, for purposes of applying the public utilities tax, we conclude the Department correctly applied its rules to determine the allocation between public utility and B&O taxes. It follows that the superior court erred when reversing the Department and Board's decisions.

Reversed, the Department's final order is affirmed.

KURTZ, C.J., and GREEN, J. Pro Tem., concur.

Review granted at 144 Wn.2d 1003 (2001).