[No. 26912. Department Two. March 14, 1938.]

PACIFIC POWER & LIGHT COMPANY, *Respondent,* v.
W. G. NORRIS *et al.,. Appellants.*[1]

[1]Reported in 77 P. (2d) 379.

92

 

*Weter, Roberts & Shefelman* and *Victor D. Lawrence,* for appellants.

*Rigg, Brown & Halverson, Paul M. Goode,* and *Laing & Gray,* for respondent.

BLAKE, J.—Plaintiff brought this action against W. G. Norris and wife, and other defendants whom it is unnecessary to mention, to foreclose a lien for electric power furnished and used upon the following described premises (owned at the time by defendants Norris) situated in section 10, township 11, north range 20 E. W. M., Yakima county: Lots 4, 5, 7, 10 and 11, parts of lots 2 and 3, and part of lot 12, Parker Orchard Tracts. The court entered a personal judgment against the defendants Norris, decreed foreclosure of the lien as claimed, and ordered the property sold. The defendants Norris appeal.

Two questions are presented for determination: (1) Did respondent have a lien upon the property which could be asserted against the appellants Norris? (2) Were appellants Norris personally liable for power furnished and used on the premises?

██ *First:* In 1929, the then owners of the above described land made application to respondent for electric power to be used upon this and other contiguous property. The applicants covenanted

". . . for themselves and their heirs, executors, administrators, successors and assigns . . . to pay promptly for the service rendered and agreed to be rendered . . . which covenant shall run with and bind the following described lands . . . to-wit: Lots 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16

Parker *Heights* Orchard Tracts, a subdivision of *section 10,* township 11, North Range 20 E. W. M., and the grantor[s] hereby grant . . . a lien upon said lands . . . for the payment of all charges for such service as in said agreement provided."

It will be noted that the lien granted was upon property situated in Parker *Heights* Orchard Tracts, while the lien claimed and foreclosed in this action is upon property in Parker Orchard Tracts, a subdivision of *section 10.* While from the record it appears that there is a subdivision in Yakima county known as Parker *Heights* Orchard Tracts, it is not situated in *section 10.* So there can be no question but that the parties to the covenant intended a lien to be established on the lots described in Parker Orchard Tracts. Nor can there be any doubt that respondent could have successfully maintained a suit for reformation of the instrument as against appellants' grantors.

But appellants contend that the lien cannot be enforced against the land for electric power furnished since they acquired title. The argument is that the recording of the instrument did not charge them with constructive knowledge of a lien upon the lots acquired by them in Parker Orchard Tracts; therefore, that it was necessary for respondent to prove that appellants had actual knowledge of the lien at the time they acquired title.

While the trial court did not make findings of fact, the decree necessarily carries the implication that the trial court was of the view that appellants did have actual knowledge of the lien claimed by respondent. For no one would contend that the recording of an instrument describing lots in Parker *Heights* Orchard Tracts would charge anyone with constructive knowledge of a lien on lots in Parker Orchard Tracts. We are of the view that the conclusion reached by the

trial court upon this issue is sustained by the evidence, to which we shall refer more specifically in discussing appellants' contention that they are not personally liable for the power charges for which the lien was foreclosed. Suffice it to say at this point that we think appellants did have actual notice of the lien at the time they acquired title to the property, and that respondent was entitled to a decree foreclosing the lien for the power charges as established.

■ *Second:* After appellants acquired title to the property, an "application for opening service account," signed "Norris Safe & Lock Co., by W. G. Norris, Prest.," was made to respondent "to cover any and all public utility service which the customer may take . . . from time to time at any location . . ." The appellants personally never made any application for power service. No account for power service was ever carried on respondent's books as a charge against Norris personally. The power accounts for which appellants were held personally liable were incurred in 1933 and 1934. In the former year, the property was in possession of Tranbarger & Taylor, as vendees under a contract of sale. Power that year was delivered on their application, and charged to them on respondent's books. In 1934, the property was in possession of a lessee of appellants, but the power account was carried in the name of Norris Safe & Lock Company.

Respondent seeks to sustain the personal judgment against appellants through letters written to respondent by Norris subsequent to the application for power made by Norris Safe & Lock Company. It is claimed that certain of these letters contain admissions of personal liability. Excerpts are called to our attention, which, standing alone, give some color to the contention. But taking the correspondence as a whole, we are satisfied that at no time did the appellants person-

ally agree to pay for power furnished. On Norris' side, all letters were written on paper carrying the letter-head: "Norris Safe & Lock Co., W. G. Norris, President, Established 1889, Incorporated 1899." On respondent's side, all letters were adressed either to "Norris Safe & Lock Company," or to "Mr. W. G. Norris, President, Norris Safe & Lock Company." Bills for power in 1934 were rendered to Norris Safe & Lock Company; in 1933, to Tranbarger & Taylor. It is clear to us that, so far as personal responsibility was concerned, respondent was looking to Tranbarger & Taylor in the one year, and to Norris Safe & Lock Company in the other.

But respondent says that there is no proof that Norris Safe & Lock Company was a corporate entity, the argument being that, if it was not a corporate entity, Norris would be personally liable on the application for power made in the name of Norris Safe & Lock Company, by "W. G. Norris, Prest." There is, however, no proof to the contrary. From the character of the application, from the manner in which respondent's letters were addressed, from the letterheads of Norris Safe & Lock Company, it is clear to us that respondent dealt with it as a corporate entity. On this record, respondent is in no position to deny that it was such. See *Washington Mill Co. v. Craig*, 7 Wash. 556, 35 Pac. 413.

While from the correspondence we are convinced that there was no intention on either side that appellants were to be held personally liable for power furnished by respondent, we are equally convinced that respondent was at all times looking to its lien upon the property as security for power bills. We are also satisfied that Norris not only knew that, but acquiesced in respondent's claim of lien. In a letter dated June 15,

1933, addressed to "Mr. W. G. Norris, President, Norris Safe & Lock Company," respondent wrote:

"As you are aware, we have a first lien on this property and under the terms of the contract attached thereto the property is liable should the owner default. Under the arrangement of extending credit to Tranbarger and Taylor the writer advised them of the situation and told them that in fairness to you, you should be notified of the arrangement. Mr. Tranbarger was agreeable, therefore this letter."

And Norris, in a letter to respondent under date of April 4, 1934, wrote: "As you have a lien on the property for your bills, I trust that you will let this balance ride until the matter is settled."

Appellants say that this, however, does not charge them with knowledge of the lien, created by their grantors, as of the time they acquired the property. Norris did not take the witness stand. In the absence of any other proof on the subject, we think it may be legitimately inferred from the above letters that Norris at all times knew that the instrument executed by his grantors in 1929 was intended to create a lien upon the land thereafter acquired by him in Parker Orchard Tracts.

The cause is remanded, with directions to modify the decree by discharging appellants Norris from personal liability.

STEINERT, C. J., ROBINSON, MILLARD, and BEALS, JJ., concur.