[No. 55420-0.    En Banc.    May 4, 1989.]

DONALD HITE, ET AL, *Respondents*, v. PUBLIC UTILITY
DISTRICT NO. 2, *Petitioner*.

*Ray A. Foianini,* for petitioner.

*Garth L. Dano* and *Jill Irene Lunn,* for respondents.

*Elizabeth Thomas* and *Thomas Eli Backer,* amici curiae for petitioner.

ANDERSEN, J.—

FACTS OF CASE

At issue in this case is whether a public utility district may contract with its customers for a lien to secure the payment of electricity charges. We hold that it can, and reverse the trial court and the Court of Appeals.[1]

On June 6, 1975, Donald and Mary Hite, plaintiffs herein, entered into an "Irrigation Power Agreement and Right–of–Way Easement" with Public Utility District No. 2 of Grant County (District). Under the agreement, the District agreed to provide electrical service so that plaintiffs could irrigate their farm. By signing the agreement, plaintiffs avoided paying up–front line extension costs. The agreement, which covered both the line extension costs and subsequent power charges, provided in part:

> All charges set forth in this agreement or accruing during the term hereof shall from the date of recording of this agreement be a lien against the above described premises. The lien shall be subject to foreclosure for delinquency or delinquencies as provided by the statutes of the State of Washington for foreclosing a real estate mortgage. . . . The Owner agrees that all provisions of this contract shall be binding on his heirs, devisees and successors or assigns, and that all such provisions are covenants that shall run with and bind the subject lands.

The plaintiffs later entered into a second agreement with the same lien provision, that one being dated February 9, 1976.

---

[1]*Hite v. PUD 2,* 51 Wn. App. 704, 754 P.2d 1274, *review granted,* 111 Wn.2d 1018 (1988).

In 1980 the plaintiffs sold the property on contract. The plaintiffs did not, however, terminate the irrigation power agreement but transferred their irrigation account to the buyer. The buyer then failed to pay the District's electric bills in 1984 and 1985. After the buyer defaulted on its purchase contract and forfeited its interest in the property, the plaintiffs retook possession and asked the District to provide electricity to irrigate the property. The District agreed to do so, but only if the plaintiffs paid the delinquent bills. The District also threatened to foreclose the lien if the delinquent bills were not paid.

Plaintiffs thereupon brought an action seeking a declaratory judgment declaring the lien invalid. The District, in turn, counterclaimed to foreclose the lien. Both parties moved for summary judgment. The Superior Court for Grant County granted plaintiffs' motion for summary judgment, holding that the contractual lien was invalid. The Court of Appeals affirmed.[2] We then granted discretionary review. One issue is presented.

### ISSUE

May a public utility district enter into a contract that contains a lien provision as security for the payment of electricity charges?

### DECISION

CONCLUSION. The lien provision is a lawful exercise of a public utility district's statutorily granted power to contract. The powers of a municipal corporation are not limited to those expressly granted by statute, but also include powers necessarily implied in such express powers.

■ Public utility districts are municipal corporations under the constitution and statutes of Washington.[3] A municipal corporation's powers are limited to those necessarily or fairly implied in or incident to powers expressly granted by statute, and to those essential to the declared

---

[2]*Hite v. PUD 2, supra.*

[3]*Washington Natural Gas Co. v. PUD 1,* 77 Wn.2d 94, 97, 459 P.2d 633 (1969); RCW 54.04.020.

objects and purposes of the corporation.[4] Under RCW 54.16.040, a district has "full and exclusive authority" to sell, regulate and control the use, distribution, rates, service, charges and price of electricity. RCW 54.16.090 gives a district the power to "make contracts . . . and do all other things necessary to carry out the provisions of this title." No statute, however, expressly grants a district authority to create a lien on real property to secure payment of its customers' utility bills. The issue thus is whether a district's power to create a lien must be statutorily spelled out, or whether it may be implied from a district's other powers.

A municipal corporation's powers are construed differently depending on whether they are governmental or proprietary.[5] It is clear that in the production and sale of electricity, a municipal corporation acts in its proprietary capacity.[6]

In that capacity, a municipal corporation acts as the proprietor of a business enterprise for the private advantage of the city and may exercise its business powers in much the same way as a private individual or corporation.[7] As a consequence, strict construction is not required in the exercise of proprietary acts.[8] This court has broadly construed the means a municipal corporation may use to conduct a statutorily authorized business.[9]

---

[4]*Port of Seattle v. State Utils. & Transp. Comm'n,* 92 Wn.2d 789, 794–95, 597 P.2d 383 (1979); *Tacoma v. Taxpayers,* 108 Wn.2d 679, 692, 743 P.2d 793 (1987).

[5]*Taxpayers,* at 693; *Puget Sound Power & Light Co. v. PUD 1,* 17 Wn. App. 861, 863, 565 P.2d 1221 (1977).

[6]*State v. O'Connell,* 83 Wn.2d 797, 834, 523 P.2d 872, 77 A.L.R.3d 874 (1974); *Scott Paper Co. v. Anacortes,* 90 Wn.2d 19, 28, 578 P.2d 1292 (1978).

[7]*PUD 1 v. Newport,* 38 Wn.2d 221, 227–28, 228 P.2d 766 (1951); *see also* 12 E. McQuillin, *Municipal Corporations* § 35.27, at 545 (3d rev. ed. 1986).

[8]2 E. McQuillin, *Municipal Corporations* § 10.22, at 1061 (3d rev. ed. 1988); *see also Bayha v. PUD 1,* 2 Wn.2d 85, 98, 97 P.2d 614 (1939).

[9]*Taxpayers,* at 694; *see, e.g., Metropolitan Seattle v. Seattle,* 57 Wn.2d 446, 460, 357 P.2d 863 (1960).

The power to contract is often mentioned specifically as one proprietary power that may be construed broadly. When acting as a private business, a municipal corporation "is implicitly authorized to make all contracts and to engage in any undertaking which is necessary to render the system efficient and beneficial to the public."[10] This court has similarly observed that when a city acts in its proprietary capacity, "it has the same right and power to contract with reference to the subject that a private corporation or an individual would have under like circumstances."[11]

The District points to these general pronouncements regarding a municipal corporation's power to contract to support its contention that the lien provision in the District's contract was lawful despite the absence of express statutory authorization. As more specific support, it cites this court's approval of a contractual lien in *Pacific Power & Light Co. v. Norris,* 194 Wash. 91, 77 P.2d 379 (1938). The action in *Norris* was based on a recorded covenant granting a lien running with the land for electric power. The lien was granted by a former owner of the defendant's property. The court held that the lien could be foreclosed even though the delinquent charges were incurred by the previous property owner.[12]

The plaintiffs maintain, however, that the utility in *Norris* was *private,* and that a *public* utility has no right to enter into a contract with such a lien provision without express statutory approval. As support, they cite *Linne v. Bredes,* 43 Wash. 540, 86 P. 858 (1906). At issue in *Linne* was the validity of a Seattle ordinance providing that water

---

[10]*Puget Sound Power & Light Co.,* at 864; *see also* 12 E. McQuillin § 35.32, at 562.

[11]*Stover v. Winston Bros. Co.,* 185 Wash. 416, 422, 55 P.2d 821, *appeal dismissed,* 299 U.S. 508 (1936); *see also* 10 E. McQuillin, *Municipal Corporations* § 29.05 (3d rev. ed. 1981).

[12]*Pacific Power & Light Co. v. Norris,* 194 Wash. 91, 94, 77 P.2d 379 (1938).

to a piece of property would be shut off until delinquent water charges were paid. A property owner challenged the City's refusal to restore water service until the previous owner's debts were paid. The property owner argued that the delinquent charges were not a lien and could not be enforced against him. The court agreed, holding that

> in the absence of express statutory authority, delinquent water rentals cannot be made a lien or incumbrance upon property, as against a subsequent owner or occupant who did not contract said charges or make default in their payment.

*Linne,* at 543. The Court of Appeals relied primarily on *Linne* in reaching its decision in the case before us.[13]

We, however, do not see *Linne* as dispositive given the facts of this case. The lien in *Linne* was imposed unilaterally by ordinance. The case does not stand for the proposition that a *contractual* lien is invalid. Moreover, the lien that Seattle attempted to enforce in *Linne* differs in other important respects from the lien at issue here. Soon after the ordinance in *Linne* was struck down, the Legislature enacted RCW 35.21.290 which gives cities and towns a lien for unpaid service charges. This lien may be enforced by cutting off the service until the delinquent charges are paid.[14] (This was what the Seattle ordinance had attempted to accomplish in *Linne.*) When the present case (*Hite*) was before the Court of Appeals, that court held that this express grant of authority to cities and towns to create a lien, and the lack of such authority to public utility districts, meant that the Legislature did not intend districts to be given a lien for delinquent charges.[15] Given the type of

---

[13]*See Hite v. PUD 2,* 51 Wn. App. 704, 707–08, 754 P.2d 1274, *review granted,* 111 Wn.2d 1018 (1988).

[14]*See also* RCW 35.21.300.

[15]*Hite,* at 707.

lien created by RCW 35.21.290, we disagree. Under that statute,

> the city is not given any *lien* at all, in the technical or usual sense of that term. The property served by the city is not liable for the charge, nor is the property to be regarded as security for the payment of the city's claim. What the statute has granted to the city is a definite, positive and unqualified *right* to shut off its service from the premises until the delinquent charges are paid. . . . This right is not in a class with tax liens, assessment liens, judgment liens, mortgage liens or mechanics' liens, which operate upon the property directly and are satisfied therefrom. The city can not, by any form of procedure, collect its charges from a forced sale of the property itself, and, in fact, the city is not seeking here to fasten upon the property any lien whatever.

*Metropolitan Life Ins. Co. v. Hansen,* 179 Wash. 537, 543, 38 P.2d 387 (1934). Since the shutoff right authorized by RCW 35.21.290 is not an actual lien, extending such a right to cities and not to public utility districts does not mean that a public utility district has no authority to agree to a contractual lien on property to secure payment of charges.

In support of such a contractual lien provision, the District points to other contractual provisions entered into by municipal corporations that have been upheld without express statutory authorization. This court approved a contract between a public utility district and developers to put wiring underground, and observed without additional comment that "[u]nder the contract, the PUD acquires a lien against the realty for all unpaid amounts due it under the contract."[16] The Court of Appeals, in turn, upheld a city requirement of support for annexation efforts as a condition for providing water service to landowners outside city limits in *People for Preserv. & Dev. of Five Mile Prairie v. Spokane,* 51 Wn. App. 816, 755 P.2d 836 (1988). "Since the City was acting in its proprietary capacity when it entered into these water service contracts, it was free to bargain for

---

[16]*Washington Natural Gas Co. v. PUD 1,* 77 Wn.2d 94, 100, 459 P.2d 633 (1969).

and include in the contracts the covenant in question."[17] This court upheld a city contract that specified the wages workers were to earn in *Stover v. Winston Bros. Co.,* 185 Wash. 416, 55 P.2d 821, *appeal dismissed,* 299 U.S. 508 (1936). Since the city entered the contract in its proprietary capacity, it "had a right to insert in the contract any condition or conditions (not in themselves unlawful) which might be deemed beneficial or advantageous to it or to its citizens."[18] We agree with the District that its power to contract would be relatively insignificant if contractual provisions were confined to those expressly authorized by statute.

Furthermore, we have traditionally allowed municipal corporations discretion in exercising their proprietary powers so long as their actions are not arbitrary, capricious or unreasonable:

> if municipal utility actions come within the purpose and object of the enabling statute and no express limitations apply, this court leaves the choice of means used in operating the utility to the discretion of municipal authorities. We limit judicial review of municipal utility choices to whether the particular contract or action was arbitrary or capricious, or unreasonable, . . .

(Citations omitted.) *Tacoma v. Taxpayers,* 108 Wn.2d 679, 695, 743 P.2d 793 (1987); *Bayha v. PUD 1,* 2 Wn.2d 85, 98, 97 P.2d 614 (1939). *See* 12 E. McQuillin, *Municipal Corporations* § 35.27, at 545 (3d ed. 1986).

Since public utility districts have express authority to make contracts, we perceive no persuasive basis for concluding that the insertion of a lien provision into a contract to secure the eventual payment of start–up costs and other charges is an arbitrary, capricious or unreasonable action or one beyond the scope of the enabling statute.

---

[17]*People for Preserv. & Dev. of Five Mile Prairie v. Spokane,* 51 Wn. App. 816, 822, 755 P.2d 836 (1988).

[18]*Stover,* at 422.

464

We therefore conclude that the lien provision in the plaintiffs' irrigation power agreement was a valid exercise of the District's authority to contract. The decisions of the trial court and the Court of Appeals granting summary judgment in favor of the plaintiffs and awarding them attorneys' fees are reversed, and plaintiffs' request to this court for attorneys' fees is denied. The case is remanded to the Superior Court for resolution of any remaining issues.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, DURHAM, and SMITH, JJ., concur.