Honorable Brian Sonntag Washington State Auditor Legislative Building P.O. Box 40021 Olympia, WA. 98540-0021
Dear Mr. Sonntag:
By letter previously acknowledged, you have asked for our legal opinion on several questions relating to the authority of public utility districts (PUDs).[1] In seeking our opinion on these issues, you indicate that the competitive environment in which PUDs operate is changing and that the potential for increased competition in the electrical utility field is contributing to expanded services and activities offered and contemplated by some PUDs. Comments submitted on behalf of public utility districts also note this changing competitive environment.
We have paraphrased your questions as follows:
 Does a PUD have authority to provide Internet access, home security services, electrical appliance repair, telephone services, cell phone and paging services, or electrical fireplaces, or to install telephone and cable equipment for developers?
 May a PUD provide proprietary services that are expressly authorized or services authorized by implication, such as vegetation management and power scheduling, to other public and private utilities within and without Washington?
 May a PUD that installs fiber optic cable for statutorily authorized purposes sell or lease excess capacity to a private entity?
 BACKGROUND
We begin our response to your questions with the legal framework for determining whether a PUD possesses a particular power. In doing so, we draw from principles concerning the authority of municipal corporations generally, and then discuss those principles of authority as they apply to PUDs in the context of your questions.
Public utility districts are municipal corporations authorized by statute. RCW 54.04.020; Washington Natural Gas Co. v. PUD 1,77 Wn.2d 94, 97, 459 P.2d 633 (1969). Under Washington law, the powers of municipal corporations are limited to those powers expressly granted by statute, those powers necessarily or fairly implied in or incident to powers expressly granted, and those powers essential to the declared purposes and objects of the corporation. Hite v. PUD 2, 112 Wn.2d 456, 458-59, 772 P.2d 481
(1989). If there is doubt whether a particular power has been granted, it is denied. Port of Seattle v. Util. Transp. Comm'n,92 Wn.2d 789, 794-95, 597 P.2d 383 (1979).
This typical formulation of the authority of municipal corporations calls for strict construction of such authority. However, in circumstances relevant to your questions, the rule actually is much more flexible. This is so because Washington courts construe the powers of municipal corporations differently depending on whether the power at issue is governmental or proprietary in nature. City of Tacoma v. Taxpayers of Tacoma,108 Wn.2d 679, 693-95, 743 P.2d 793 (1987). In producing and selling electricity, a PUD is engaged in a proprietary capacity. Hite,112 Wn.2d at 459. Where a municipal corporation acts as the proprietor of a business enterprise — such as in producing and selling power — its authority is liberally construed. Id.[2]
The state Supreme Court has described the implied authority of a municipal utility in the exercise of proprietary acts in the following way:
 We have viewed the Legislature as implicitly authorizing a municipality to make all contracts, and to engage in any undertaking necessary to make its municipal electric utility system efficient and beneficial to the public. In addition, we have traditionally viewed an express grant of proprietary authority as implying those "powers . . . necessarily or fairly implied in or incident to [express powers] and also those essential to the declared objects and purposes of the [municipal] corporation."
City of Tacoma, 108 Wn.2d at 694-95 (brackets and ellipses in original) (citations omitted).
Nevertheless, there are limits on the authority of a municipal utility, even when it is exercising proprietary power.
Of course, [the municipal utility's] authority has limits. In exercising its proprietary power, [the municipal utility] may not act beyond the purposes of the statutory grant of power, or contrary to express statutory or constitutional limitations. Thus, if municipal utility actions come within the purpose and object of the enabling statute and no express limitations apply, this court leaves the choice of means used in operating the utility to the discretion of municipal authorities. We limit judicial review of municipal utility choices to whether the particular contract or action was arbitrary or capricious, or unreasonable.
City of Tacoma, 108 Wn.2d at 695 (citations omitted).
These principles provide the analytical framework applicable to your questions. The analysis consists of four inquiries. First, does the PUD have express authority, as liberally construed, to engage in the activity at issue? If it does, that ends the inquiry. If the authority is not express, then three additional questions must be considered to determine whether the activity is within the implied authority of the PUD. The first of these is whether the proprietary activity at issue is within the purpose and object of the statutes governing PUDs. The second question is whether a statute or constitutional provision expressly limits the activity. The third is whether the activity is arbitrary or capricious, or unreasonable. If the answer to the first inquiry relating to implied powers is "yes" — i.e., the activity is within the purpose and object of statutes authorizing PUDs, and the answer to the second and third inquiries is "no" — i.e., there is no constitutional or statutory provision limiting the activity and the activity is neither arbitrary or capricious nor unreasonable, then a PUD may engage in the proprietary activity at issue.
 SHORT ANSWER
A PUD has express authority to sell or lease electrical fireplaces and implied authority to repair the electric appliances that it sells or leases. A PUD lacks authority to provide Internet access, home security services, electrical appliance repair independent of electric appliance sales, telephone services, cell phone and paging services, and installation of telephone and cable equipment for developers.
A PUD may provide electric power that it acquires incident to its primary purpose of generating electric energy for the district and its inhabitants to other public and private utilities, within and without Washington. A PUD also may provide vegetation management and power scheduling to such entities, within and without the state.
Finally, a PUD may sell or lease to a private entity excess fiber optic cable installed for the primary purpose of conducting the PUD's electric utility business.
 QUESTION 1
Does a PUD have authority to provide Internet access, homesecurity services, electrical appliance repair, telephoneservices, cell phone and paging services, electrical fireplaces,or to install telephone and cable equipment for developers?
Electrical Fireplaces And Appliances
In keeping with the analytical framework discussed above, we first consider whether a PUD has express authority to provide these services or products.
The proprietary authority of PUDs largely is set forth in RCW 54.16. We find language in RCW 54.16.040, that liberally construed, would authorize the sale of electrical fireplaces. In relevant part, this statute grants to PUDs the "right to purchase, handle, sell, or lease motors, lamps, transformers and all other kinds of equipment and accessories necessary and convenient for the use, distribution, and sale [of electrical current]".
Our conclusion in this respect finds further support in the fact that the sale of electrical appliances by municipal utilities has been a long standing practice, known to the Legislature. See AGO 1978 No. 13, at pages 10-11, to then Senator Ted Bottiger, noting and approving this practice.
We also conclude that a PUD selling or leasing electrical fireplaces would have the authority to provide for the repair of such appliances. In Hite, the Court held that a PUD has broad authority to craft contract terms. In our opinion, providing a service agreement in connection with a contract for the sale of electrical fireplaces would be consistent with a PUD's broad authority to contract. Moreover, we believe that express authority to sell or lease electric appliances implies the authority to ensure that they remain in good working order. However, we conclude that a PUD does not have authority to engage in electric appliance repair services on a broader, free-standing basis. In our opinion, such activity would amount to a separate business, beyond the authority of a PUD, under principles relating to implied authority, discussed shortly.[3]
Other Services
By contrast, we find no express authority in governing statutes for a PUD to provide Internet access, home security services, electrical appliance repair generally, telephone services, cell phone and paging services, or installation of telephone and cable equipment for developers. That being the case, under the analytical framework described above, the next question in determining whether a PUD has implied authority to engage in these activities is whether they are within the object and purpose of a PUD.
PUDs are authorized by RCW 54.04.020, as follows:
 Municipal corporations, to be known as public utility districts, are hereby authorized for the purposes of [this act] and may be established within the limits of the state of Washington, as provided herein.
(Emphasis added.) The purpose of the act is set forth in Laws of 1931, ch. 1, § 1, which states:
 The purpose of this act is to authorize the establishment of public utility districts to conserve the water and power resources of the State of Washington for the benefit of the people thereof and to supply public utility service, including water and electricity for all uses.
Case law similarly recognizes that the primary purpose of a public utility district is to furnish the district and its inhabitants with electrical current. State ex rel. PUD 1 v. Wylie, 28 Wn.2d 113,126, 182 P.2d 706 (1947).
In our view, none of the services about which you inquire appear to be within the purposes of a PUD as set forth above or as expressed in case law. City of Tacoma v. Taxpayers of Tacoma is instructive in explaining why we reach this conclusion. There, the Court determined that the implied proprietary powers of the City of Tacoma in operating a municipal electrical utility were broad, and would include "any undertaking necessary to make its electric utility system efficient and beneficial to the public". City ofTacoma, 108 Wn.2d at 694-95. Nevertheless, the Court observed:
 We note in passing that [the municipal corporation] does not claim authority to operate a separate business. On several occasions, we have rejected the contention that the legislative purpose in granting authority to operate one business impliedly conveys authority to operate a separate, but necessarily incident, business. Port of Seattle v. State Utils. Transp. Comm'n, 92 Wn.2d 789, 794, 597 P.2d 383 (1979). The Port of Seattle had claimed authority to operate its own ground transportation business (airporter service) pursuant to its authority under RCW 53.08.020 to control and operate Sea-Tac Airport. We rejected the Port's contention, holding that an airporter service business was neither implied in, nor within the purposes of, the legislative grant of authority contained in RCW 53.08.020. Port of Seattle, at 794-96. Our decision in Port of Seattle conformed with a much earlier decision, where we held that the authority to organize a port district does not include authority to operate a separate belt railway line business. State ex rel. Huggins v. Bridges, 97 Wn. 553, 166 P. 780 (1917).
City of Tacoma, 108 Wn.2d at 695-96 n. 10 (emphasis added).
Cowden v. Kennewick Irrigation District, 76 Wn. App. 844, 847,888 P.2d 1225 (1995), reflects the same principle. There, the court concluded that despite the broad authority of an irrigation district acting in a proprietary capacity, developing district real estate for residential uses exceeded the purpose of the irrigation district and, consequently, was not impliedly authorized.
Thus, case law stands for the proposition that the broad authority of a municipal corporation to engage in proprietary activities does not imply authority to engage in "separate" yet "incident" businesses.
It seems apparent that the activities about which you inquire in your first question would constitute a "business", at least assuming that the activity is pursued regularly and for gain. It also seems apparent that Internet access, home security, electric appliance repair, telephone service, cell phone and paging service, and installation of telephone and cable equipment for developers are distinct business activities, separate from the production and distribution of electrical power — the primary business of a PUD. That the end products and services provided by these separate business activities could be used by the PUD to communicate with its customers and vice versa, or to engender the goodwill of customers, is not sufficient to render them part of the business of producing and distributing electrical energy. Rather, we conclude that these activities would constitute "separate" businesses, "incidental" in varying degrees to the business of generating and distributing electrical power. As such, they are not presently within the implied authority of a PUD. SeeCity of Tacoma v. Taxpayers.[4]
Finally, we note that the Legislature remains free to provide authority to PUDs to engage in these or other activities. This opinion merely concludes that the Legislature has not yet done so.
 QUESTION 2
May a PUD provide proprietary services that are expresslyauthorized or services authorized by implication, such asvegetation management and power scheduling, to other public andprivate utilities within and without Washington?
This question has several components. First, it is posed as to expressly authorized services and those authorized by implication. In addition, each of these questions has two elements. The first relates to the identity of parties who may receive services from a PUD. The second relates to whether those services may be provided outside Washington. We will treat these aspects of your question in this order.
Your question does not identify a specific, expressly authorized service that a PUD might provide to another utility within or without Washington. We will treat your question as asking whether a PUD may distribute electrical energy to other private and public utilities within and without Washington.
RCW 54.16.040 sets forth authority of a PUD relating to the distribution of electrical power. It provides:
 A district may purchase, within or without its limits, electric current for sale and distribution within or without its limits, and construct, condemn and purchase, purchase, acquire, add to, maintain, conduct, and operate works, plants, transmission and distribution lines and facilities for generating electric current, operated either by water power, steam, or other methods, within or without its limits, for the purpose of furnishing the district, and the inhabitants thereof and any other persons, including public and private corporations, within or without its limits, with electric current for all uses, with full and exclusive authority to sell and regulate and control the use, distribution, rates, service, charges, and price thereof, free from the jurisdiction and control of the utilities and transportation commission, in all things, together with the right to purchase, handle, sell, or lease motors, lamps, transformers and all other kinds of equipment and accessories necessary and convenient for the use, distribution, and sale thereof: PROVIDED, That the commission shall not supply water to a privately owned utility for the production of electric energy, but may supply, directly or indirectly, to an instrumentality of the United States government or any publicly or privately owned public utilities which sell electric energy or water to the public, any amount of electric energy or water under its control, and contracts therefor shall extend over such period of years and contain such terms and conditions for the sale thereof as the commission of the district shall elect, such contract shall only be made pursuant to a resolution of the commission authorizing such contract, which resolution shall be introduced at a meeting of the commission at least ten days prior to the date of the adoption of the resolution: PROVIDED FURTHER, That it shall first make adequate provision for the needs of the district, both actual and prospective.
This statute clearly authorizes a PUD to provide electrical current to third parties. Nonetheless, the courts have recognized a limit on this authority that also is reflected in the final proviso of the statute — namely, providing for the actual and prospective needs of the district. A PUD may generate power and furnish it to such third parties, only when doing so is incidental to the primary purpose of the PUD — providing the district and its inhabitants with electrical power. State ex rel. PUD 1 v. Wylie,28 Wn.2d 113, 182 P.2d 706 (1947); State ex rel. PUD 1 v. Schwab,40 Wn.2d 814, 246 P.2d 1081 (1952). Although this purpose limits permissible actions of the PUD, the judgment of the PUD in determining and providing for the district's future needs for power is entitled to considerable deference. For example, in PUD 1v. Taxpayers of Snohomish County, 78 Wn.2d 724, 479 P.2d 61
(1971), the court sanctioned the district's acquisition of additional facilities for future needs. The fact that surplus power would be available in the meantime and would be sold to other power agencies did not render the district's decision to acquire the additional facilities arbitrary or capricious. By contrast, in Wylie, the court concluded that a PUD lacked authority to acquire the facilities of a private utility throughout several counties of the state, because the proposed acquisition was "unreasonably large and entirely inappropriate to for the accomplishment of the primary purpose of the Skagit district". Wylie, 28 Wn.2d at 152.
We read these cases and the above statute to mean that a PUD may generate surplus power and provide it to public and private utilities serving the public, where the generation and sale is secondary and incidental to accomplishing the PUD's primary purpose — providing electrical power to the district and its inhabitants.
The second element of your inquiry is whether a PUD may distribute electrical power to such utilities outside of the state of Washington. RCW 54.16.040, quoted above, clearly authorizes a PUD to distribute electrical power beyond the limits of the PUD. Distribution outside of the limits of the state is not specifically addressed by the statute.
The only Washington case we have found considering an issue of this nature, concluded that under similar statutory language, the city of Walla Walla could acquire water facilities outside of the state of Washington that were necessary to operate its municipal water system. Langdon v. City of Walla Walla, 112 Wn. 446, 452,193 P. 1 (1920) ("[S]ince a city's ownership and dominion over such property is [proprietary], and the city is unqualifiedly authorized to acquire such property `without' as well as `within' its corporate limits, we are quite unable to see that the power of acquiring and owning such property is limited to property within our own state."). Although Langdon involved the power to acquire property outside of the state and here we consider the power to sell property outside of the state, we do not believe this distinction is important. Rather, we see the Court's recognition of the authority of a municipal corporation to act in a proprietary capacity outside of the state as pivotal and equally applicable to the question you have posed.
A caution is in order in this regard. This does not mean that a PUD has unfettered authority to sell electrical power outside of the state of Washington. This power, like that of a PUD to sell energy to utilities within Washington, is circumscribed by the primary purpose of the PUD. Such sales must be secondary to the primary purpose and authority of a PUD — distributing electrical power to the district and its inhabitants. Cases such as Wylie andTaxpayers of Snohomish County make it clear that a PUD has considerable discretion in providing for its power needs, current and future, that it may acquire facilities and energy not immediately necessary for its purposes, but that it is not a free-roving unrestricted producer or supplier of electrical power. See also Washington Public Power Supply System v. PacificNorthwest Power Co., 217 F. Supp. 481, 491 (D.C. Or. 1963), which concludes that the powers of public utility districts may not be used to construct massive hydroelectric projects in other states to engage in activity far beyond the primary purpose of a PUD. We conclude that this limitation would apply equally to the authority of a PUD to distribute power whether within or without the state.
You ask essentially the same question with respect to what you identify as two implied powers of a PUD — power scheduling and vegetation management. Although your letter does not describe these activities, comments submitted to us do, and we use that information to define the activities we address. First, we understand vegetation management to mean controlling or removing vegetation around power facilities and lines to ensure that it does not interfere with them. We understand power scheduling to be the process of managing the acquisition and distribution of power to match anticipated customer demand.
Your question then, is whether a PUD may provide these services to other public and private utilities within and without Washington.
In our opinion, a PUD is expressly authorized to engage in these activities and is expressly authorized to engage in these activities on behalf of other public and private utilities. RCW 54.16.040 authorizes a PUD to maintain plant and equipment for generating and distributing electric current. This certainly would seem to include vegetation management. The same statute authorizes a PUD to purchase and generate electric current and regulate and control the distribution of electric energy. In our view, this effectively describes power scheduling.
RCW 54.16.090 authorizes a PUD to provide these services to other public and private utilities. It states:
 A district may enter into any contract or agreement with the United States, or any state, municipality, or other utility district, or any department of those entities, or with any cooperative, mutual, consumer-owned utility, or with any investor-owned utility or with any association of any of such utilities, for carrying out any of the powers authorized by this title.
Moreover, this provision contemplates that a PUD may contract to carry out these powers with such entities outside the state of Washington. Indeed, it specifically identifies at least one entity that by definition is outside of this state — another state.
 QUESTION 3
May a PUD that installs fiber optic cable for statutorilyauthorized purposes sell or lease excess capacity to a privateentity?
As we understand your question, it asks us to assume that installation of the fiber optic cable was for PUD purposes in generating and distributing electric current and that it was not all out of proportion to the present and future needs of the PUD, as reasonably determined by the district commissioners in the exercise of their discretion. We make that assumption for purposes of responding to this question. Based on that assumption, we conclude that the answer to this question is yes. While we find no express authority for this activity in governing statutes, we believe that such authority is implied
We know of no principle of law that would require a PUD to hold idle and unproductive excess capacity developed for its own use in generating and distributing electric power. Cases previously discussed conclude that a PUD has authority to sell surplus energy generated as an incident of operating the utility for its primary purpose of providing power to the district and its inhabitants. In addition, the state Supreme Court tacitly recognized that a PUD may rent space on utility poles when that space is surplus to the utility's needs, in affirming the authority of the PUD to establish rental rates for such space. Snohomish Cy. PUD v.Broadview Television Co., 91 Wn.2d 3, 586 P.2d 851 (1978). We see no basis for distinguishing the authority of a PUD to make productive use of excess capacity developed to pursue its primary purpose, under the circumstance about which you inquire.
Moreover, the analytical framework for determining whether a municipal corporation acting in a proprietary capacity has a particular implied power supports the same conclusion. The first inquiry would be whether the activity was within the purposes of the PUD. Your question asks us to assume that installation of the fiber optic was within the purposes of the PUD. The second question would be whether statutes or the constitution limit the authority of the PUD to sell or lease surplus property acquired incident to engaging in its primary purpose. We find nothing so limiting a PUD. The final question would be whether such an action would be unreasonable or arbitrary or capricious. Again, nothing in your inquiry provides a basis for so concluding.
We trust that this opinion will be of assistance to you.
Very truly yours,
CHRISTINE O. GREGOIRE Attorney General
MAUREEN A. HART Sr. Assistant Attorney General
[1] Notice of your opinion request was placed in the Washington State Register, as is the practice of this office when it appears that individuals and entities outside the Attorney General's Office possess information and expertise that may be of assistance in preparing a particular opinion. We received information and comments from numerous individuals and entities in response to that notice. We appreciate and have fully considered the extensive information and comments provided to us.
[2] See also Laws of 1931, ch. 1, § 11, part of the act initially authorizing PUDs and calling for liberal construction to carry out the purposes for which the act was intended.
[3] We note that RCW 54.16.040 provides that PUDs may "purchase, sell, handle or lease" equipment and accessories necessary or convenient for using electric current. When the term "handle" is considered in this context, we conclude that it connotes authority to distribute or trade in such items, not free-standing authority to engage in their repair. See Olympic Steamship Co. v. CentennialIns. Co., 117 Wn.2d 37, 50-51, 811 P.2d 673 (1991) (so construing the term "handle" when used in a similar context).
[4] In planning for its future power needs, it is permissible within certain limits for a PUD to develop or acquire property or capacity in excess of the PUD's then existing requirements. The authority of a PUD in this regard is discussed in greater detail in response to Questions 2 and 3, infra. Where that is the case, a PUD could make the excess capacity or property available to a third party, who in turn could use it for purposes of a separate business venture. Our response to this inquiry is not meant to foreclose such a possibility.