Honorable Jeff Morris State Representative, 40th District P.O. Box 40600 Olympia, WA 98504-0600
Dear Representative Morris:
By letter previously acknowledged, you have asked for our legal opinion regarding the authority of public utility districts (PUDs) and rural port districts to provide telecommunications services or facilities. Your questions arise out of legislation enacted in 2000, granting public utility districts and rural port districts identical authority with respect to telecommunication facilities. Under these statutes, a public utility district or a rural port district in existence on the effective date of the 2000 legislation may
 construct, purchase, acquire, develop, finance, lease, license, handle, provide, add to, contract for, interconnect, alter, improve, repair, operate, and maintain any telecommunications facilities within or without the district's limits for the following purposes:
 (a) For the district's internal telecommunications needs; and
 (b) For the provision of wholesale telecommunications services within the district and by contract with another public utility district.
 Nothing in this subsection shall be construed to authorize public utility districts to provide telecommunications services to end users.
Laws of 2000, ch. 81, §§ 3, 7 (codified at RCW 54.16.330(1) and RCW 53.08.370(1)).
Your questions, re-ordered to reflect our analysis and edited slightly for clarity, ask:
 Is a public utility district or rural port district authorized to sell excess capacity from internal telecommunications systems directly to end users under any circumstances?
 Do RCW 54.16.330(1) and 53.08.370(1) preclude public utility districts and rural port districts from providing telecommunications services or facilities to end users under any circumstances?
 RCW 39.34.080 allows public agencies to contract with one or more other public agencies to perform any governmental service activities or undertaking that each public agency entering into the contract is authorized by law to perform. Does this statute, or any other statute, authorize a public utility district or rural port district to provide telecommunications services or facilities directly to another public agency as an end user?
Your letter also asks whether provision of telecommunications facilities or services for internal telecommunications needs or for wholesale telecommunications services is proprietary or governmental. We address this subject in the context of answering the three questions.
 SHORT ANSWER
A PUD or rural port district may not sell or lease excess capacity to end users under any circumstances. RCW 54.16.330(1) and 53.08.370(1) each contain a rule of construction that precludes interpreting those statutes to allow sales or leasing of telecommunications facilities or services to end users. No other statute provides authority for a PUD or rural port district to sell or lease telecommunications facilities or services to end users. Because PUDs and rural port districts lack the authority to sell or lease telecommunications facilities or services to end users, and the legislature has not distinguished governmental agencies, the Interlocal Cooperation Act does not authorize a public utility district or port district to sell or lease telecommunications facilities or services to another public agency as an end user.
 BACKGROUND
In 1998, we provided our opinion about the powers of a PUD to engage in services ancillary to its primary statutory purposes. See AGO 1998 No. 14
(copy attached). Our opinion stated that a PUD does not have express or implied authority to operate a business providing Internet services on a retail basis. Id. at 6. We recognized, however, that if a PUD has excess capacity on its telecommunications facilities developed and used for its own communication purposes, such as its fiber optic cable installed for PUD purposes, then the PUD could sell or lease use of that facility until such time as the PUD needed the capacity. Id. at 10.
Subsequently, the Legislature passed Laws of 2000, ch. 81, expressly providing that a PUD or a rural port district could own and develop telecommunications facilities for two express purposes: (a) internal telecommunications needs; and (b) for the provision of wholesale telecommunications services within the district and by contract with another public utility district. See RCW 54.16.330(1)(b), 53.08.370(1)(b). To answer your questions regarding the authority of a PUD or rural port district, we start with the general analysis provided in AGO 1998 No. 14
and then consider this new law using that analysis.
PUDs are municipal corporations authorized by statute. See RCW 54.04;Wash. Natural Gas Co. v. PUD 1, 77 Wn.2d 94, 97, 459 P.2d 633 (1969). Similarly, port districts are municipal corporations authorized by statute. See RCW 53.04.060; Tyrpak v. Daniels, 124 Wn.2d 146, 151,874 P.2d 1374 (1994). Under Washington law, the powers of municipal corporations are limited to those powers expressly granted by statute, those powers necessarily or fairly implied in or incident to powers expressly granted, and those powers essential to the declared purposes and objects of the corporation. Hite v. PUD 2, 112 Wn.2d 456, 458-59,772 P.2d 481 (1989). If there is doubt whether a particular power has been granted, it is denied. Port of Seattle v. Wash. Util. Transp.Comm'n, 92 Wn.2d 789, 794-95, 597 P.2d 383 (1979).
The range of powers of a municipal corporation that may be "fairly implied" is broader when the activity at issue is proprietary rather than governmental in nature. City of Tacoma v. Taxpayers of Tacoma,108 Wn.2d 679, 693-95, 743 P.2d 793 (1987). Where a municipal corporation acts as the proprietor of a business enterprise — such as in producing and selling electrical power — its authority is liberally construed to include necessary incidental powers to determine the means of operating the authorized proprietary purpose. Hite, 112 Wn.2d at 459. The Supreme Court has described how a municipal utility in the exercise of proprietary authority has a broader scope of incidental authority:
 We have viewed the Legislature as implicitly authorizing a municipality to make all contracts, and to engage in any undertaking necessary to make its municipal electric utility system efficient and beneficial to the public. In addition, we have traditionally viewed an express grant of proprietary authority as implying those "powers . . . necessarily or fairly implied in or incident to [express powers] and also those essential to the declared objects and purposes of the [municipal] corporation."
City of Tacoma, 108 Wn.2d at 694-95 (brackets and ellipses in original) (citations omitted).
Nevertheless, there are significant limits on the authority of a municipal utility, even when it is exercising proprietary power.
 Of course, [the municipal utility's] authority has limits. In exercising its proprietary power, [the municipal utility] may not act beyond the purposes of the statutory grant of power, or contrary to express statutory or constitutional limitations. Thus, if municipal utility actions come within the purpose and object of the enabling statute and no express limitations apply, this court leaves the choice of means used in operating the utility to the discretion of municipal authorities. We limit judicial review of municipal utility choices to whether the particular contract or action was arbitrary or capricious, or unreasonable.
City of Tacoma, 108 Wn.2nd at 695 (citations omitted).
In producing and selling electricity, a PUD is engaged in a proprietary capacity. Hite, 112 Wn.2d at 459. Port districts similarly "perform services which are essentially proprietary." Roza Irrig. Dist. v. State,80 Wn.2d 633, 640, 497 P.2d 166 (1972). Essentially, all of the functions of limited purpose municipal corporations, such as PUDs and port districts, are proprietary in nature. Id. Therefore, where the telecommunications facilities serve the internal needs of a PUD or a rural port district, the PUD or port district continues to engage in the proprietary functions for which the districts were created.
In addition to providing for their own internal communication needs, the 2000 legislation authorizes PUDs and rural port districts to provide wholesale telecommunications services. Providing wholesale telecommunications services is not governmental in any ordinary sense. Instead, it is proprietary in the sense that this same function is often operated as a business enterprise. See Hite, 112 Wn.2d at 459. Seegenerally 2A Eugene McQuillin, The Law of Municipal Corporations § 10.22 (3d ed. 1996) (describing distinctions between governmental and proprietary powers). Therefore, we consider the wholesale telecommunications services to be a proprietary activity of a PUD or rural port district.
As noted above, the primary implication of the proprietary function is that a municipal corporation has broader discretion and authority to utilize the means of a proprietor to accomplish a proprietary purpose. It does not, however, imply that the municipal corporation has the broad discretion of an entrepreneur to initiate ancillary businesses that are incidental to the authorized purposes of a PUD or port district. See AGO1998 No. 14, at 6.
 ANALYSIS
To answer your questions, we first define what is meant by the statutory reference to selling telecommunications services to "an end user". This term is used in RCW 54.16.330(1) and 53.08.370(1). These statutes authorize PUDs or rural port districts to provide "wholesale telecommunication services" but do not authorize these entities "to provide telecommunications services to end users."
The meaning of the statutory reference to end users is derived from other definitions included in the 2000 Legislation and reflects a distinction between wholesale and retail business activities. RCW 53.08.005(5) and RCW 54.16.005(4) provide:
 "Wholesale telecommunications services" means the provision of telecommunications services or facilities for resale by an entity authorized to provide telecommunications services to the general public and internet service providers. (Italics added.)
Based on statutory context, we understand "end user" to be in contrast to a person who would resell telecommunications services or facilities. In our analysis, an end user is equivalent to a retail customer who purchases telecommunications services from an authorized entity, or the equivalent of a person who purchases services from an Internet service provider.
 1. Is a public utility district or rural port district authorized to sell excess capacity from internal telecommunications systems directly to end users under any circumstances?
Keeping in mind our definition of end user, we consider first whether a PUD or rural port district is authorized to sell excess capacity from internal telecommunications systems directly to end users under any circumstances. The answer to this question is no — under both the authority that existed before the enactment of the 2000 legislation and under the provisions of that law. Our 1998 opinion stated that PUDs could make "the excess capacity or property available to a third party, who in turn could use it for purposes of a separate business venture", but could not themselves engage in a separate yet ancillary business such as offering Internet services. See AGO 1998 No. 14, at 6-7, n. 4.
In City of Tacoma, above, the court "rejected the contention that the legislative purpose in granting authority to operate one business impliedly conveys the authority to operate a separate, but necessarily incident, business." 108 Wn.2d at 695 n. 10. Providing telecommunications service to end users, such as acting as an Internet service provider or by selling phone services, would be ancillary to the authorized proprietary purposes of a PUD and is not authorized. See AGO 1998 No. 14, at 6-7.
Our analysis regarding PUD power is equally applicable to rural port districts. The purposes set out in RCW Title 53 show that port districts are directed to particular purposes. Districts are
 authorized to be established in the various counties of the state for the purposes of acquisition, construction, maintenance, operation, development and regulation within the district of harbor improvements, rail or motor vehicle transfer and terminal facilities, water transfer and terminal facilities, air transfer and terminal facilities, or any combination of such transfer and terminal facilities, and other commercial transportation, transfer, handling, storage and terminal facilities, and industrial improvements.
RCW 53.04.010. The express purposes of rural port districts, as confirmed by the express powers granted those districts in RCW 53.08, do not suggest that the purposes of rural port districts include engaging in an ancillary business of providing telecommunications, Internet, cable television, or related services to end users. Accordingly, we reach the same conclusion for rural port districts as for PUDs: A rural port district can make the excess capacity or property available to a third party, who in turn could use it for purposes of a separate business venture involving end users, but the rural port district itself is not authorized to initiate a separate business such as offering Internet services or telecommunications services to end users.
Our conclusion that excess internal capacity cannot be sold or leased to end users is consistent with the 2000 legislation. The second express purpose of the authorization for PUD or rural port district telecommunications facilities provides that the district may construct and hold telecommunications facilities to provide for wholesale telecommunications services. By specifically authorizing "wholesale" services, the statute demonstrates that there is no authority for PUDs or rural port districts to provide telecommunications services to end users that are not wholesale.
We note that our 1998 opinion included the premise that a PUD's telecommunications facilities should relate to the existing or reasonably anticipated internal needs of that PUD, not deliberately create excess capacity for the purpose of sales or leasing. AGO 1998 No. 14, at 10. By adopting RCW 54.16.330(1) and RCW 53.370(1), the Legislature has expressly authorized a PUD and rural port district to construct or hold telecommunications lines for the purpose of providing "wholesale telecommunications services". This express purpose necessarily requires capacity in excess of the internal needs of the PUD or rural port district.
 2. Do RCW 54.16.330(1) and 53.08.370(1) preclude public utility districts and rural port districts from providing telecommunications services or facilities to end users under any circumstances?
We interpret this second question as arising from the language in both statutes providing that "[n]othing in this subsection shall be construed to authorize [a PUD or rural port district] to provide telecommunications services to end users." RCW 54.16.330(1), 53.08.370(1). This is a rule of construction applicable to the subsections affected. It demonstrates how the Legislature intended the subsections to be interpreted. As such, this language limits the permissible interpretations of the authority created by the new subsections. See Malyon v. Pierce County, 131 Wn.2d 779,800-01, 935 P.2d 1272 (1997) (interpreting Const. art. I, § 11, which included directive that the article "not be so construed"). We therefore first consider how the rule of construction controls our interpretation of the affected subsections.
To interpret whether RCW 54.16.330(1) and 53.08.370(1) imply that a PUD or rural port district is authorized to sell or lease telecommunications facilities to end users under any circumstances, we turn to the analytical framework described in our 1998 opinion:
 The analysis consists of four inquiries. First, does the PUD have express authority, as liberally construed, to engage in the activity at issue? If it does, that ends the inquiry. If the authority is not express, then three additional questions must be considered to determine whether the activity is within the implied authority of the PUD. The first of these is whether the proprietary activity at issue is within the purpose and object of the statutes governing PUDs. The second question is whether a statute or constitutional provision expressly limits the activity. The third is whether the activity is arbitrary or capricious, or unreasonable. If the answer to the first inquiry relating to implied powers is "yes" — i.e., the activity is within the purpose and object of statutes authorizing PUDs, and the answer to the second and third inquiries is "no" — i.e., there is no constitutional or statutory provision limiting the activity and the activity is neither arbitrary or capricious nor unreasonable, then a PUD may engage in the proprietary activity at issue.
AGO 1998 No. 14, at 3-4 (italics added).
The italicized question applies here. Based on the express rule of construction, we conclude that the Legislature has foreclosed interpreting RCW 54.16.330(1) and 53.08.370(1) to provide a PUD or rural port district with authority to provide telecommunications services to end users. The language unambiguously precludes any contrary interpretation of RCW 54.16.330(1) or RCW 53.08.370(1).
Our interpretation of the rule of construction in the statute is consistent with the Legislature's specific purposes for authorizing telecommunications facilities, which are limited to internal telecommunications needs and wholesale telecommunications services. As explained in our answer to question one, these express purposes do not authorize a PUD or rural port district to engage in a separate business venture providing retail telecommunications service, Internet provider service, or other telecommunications services to end users. See City ofTacoma, above. The Legislative rule of construction thus clarifies that providing services to end users is not a permissible construction of the two express purposes.
To answer question two fully, we must also consider whether statutes outside of RCW 54.16.330(1) and RCW 53.08.370(1) authorize a PUD or rural port district to provide telecommunications services to end users. We find no statutes in RCW Titles 53 and 54 that suggest that a PUD or rural port district is authorized to provide use of its telecommunications facilities as a business venture selling services to end users.
Therefore, we conclude that the limiting language in RCW 54.16.330(1) and53.08.370(1) precludes a PUD or rural port district from providing telecommunications services to end users. It does so by foreclosing that interpretation of the statutes that expressly authorize telecommunications facilities for internal needs or wholesale telecommunications services, and because no other statute provides such authority to PUDs or rural port districts.
 3. RCW 39.34.080 allows public agencies to contract with one or more other public agencies to perform any governmental service activities or undertaking that each public agency entering into the contract is authorized by law to perform. Does this statute, or any other statute, authorize a public utility district or rural port district to provide telecommunications services or facilities directly to another public agency as an end user?
We now consider whether RCW 39.34.080 authorizes a PUD or rural port district to provide telecommunications services or facilities to another public agency as an end user. RCW 39.34 is commonly known as the Interlocal Cooperation Act. The Legislature declared the policy of this Act in RCW 39.34.010:
 It is the purpose of this chapter to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population and other factors influencing the needs and development of local communities.
The Act expressly allows cooperation among "public agencies" which includes "political subdivisions" of the state. This includes counties and municipal corporations. The power to cooperate, however, is limited to the existing powers of a government agency or municipal corporation. RCW 39.34.080 provides in part:
 Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking which each public agency entering into the contract is authorized by law to perform[.]
As we discussed above, RCW 54.16.330(1) and 53.08.370(1) authorize PUDs and rural port districts to provide telecommunications facilities for specified purposes but do not authorize PUDs and rural port districts to provide telecommunications services to end users. Under the Interlocal Cooperation Act, PUDs and rural port districts cannot exercise authority on behalf of other government agencies when they lack that authority to act in their own right. RCW 39.34.080; see also AGO 1969 No. 8 (opining that the state Department of Institutions did not have authority under the Interlocal Cooperation Act to contract with a county for temporary housing of county jail prisoners).
In AGO 1969 No. 8, the specific authority of the Department of Institutions to use its facilities was limited to confining persons convicted of specified classes of crimes. That specific purpose did not provide authority to use those facilities for a general purpose of providing housing for all persons held in legal custody of various other governmental entities. See AGO 1969 No. 8, at 2. Similarly, PUDs and rural port districts are not authorized to provide telecommunications facilities and services to end users. RCW 39.34.080 therefore applies and precludes a PUD or rural port district from providing telecommunications facilities or services to end users because that activity is not within their authority.
This conclusion is further supported by the rule of construction in RCW54.16.330(1) and 53.08.370(1). It would be incongruous if that limitation could be contravened by a PUD or rural port district entering a contract under the Interlocal Cooperation Act. Moreover, nothing in RCW 54.16.330(1) and 53.08.370(1) suggests that end users should be analyzed differently if it is another public agency. Therefore, we conclude that the Interlocal Cooperation Act does not authorize a public agency to be an end user for telecommunications facilities or services acquired from a PUD or rural port district.
Our answer to this third question is limited. First, it is based on our definition of end user in terms of wholesale and retail activities. We assume that a PUD or rural port district will not deal with an end user for telecommunications facilities except by engaging in an unauthorized business that is ancillary to the purposes of the PUD or rural port district. Second, we do not imply that public agencies lack authority to be end users for telecommunications facilities, Internet, or related telecommunications services. Therefore, we do not foreclose a PUD or rural port district that might act jointly with other governmental agencies to secure telecommunications services from a retail provider. Our answer to question three is based on PUDs and rural port districts lacking authority to provide telecommunications services to end users.
We trust that you will find the foregoing to be of assistance.
Sincerely,
JAY DOUGLAS GECK Senior Counsel